552 So.2d 355 (1989)
STATE of Louisiana
v.
Thomas Mitchell DEBOUE.
No. 86-KA-0635.
Supreme Court of Louisiana.
June 19, 1989.
Rehearing Denied December 7, 1989.
*357 William J. Guste, Jr., Atty. Gen., Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., for appellee.
Michael Gallagher, for appellant.
CALOGERO, Justice.
Defendant Thomas Mitchell Deboue was indicted by an Orleans Parish Grand Jury on May 24, 1984, and charged with two counts of first degree murder for the killing of Nigquika Miller, age six, and Jamal Moore, age eleven. Defendant's brother, Edward James Deboue, was indicted on the same charges and tried along with defendant. After the guilt phase of the bifurcated trial, the jury found defendant and his brother guilty as charged on both counts of first degree murder. At the conclusion of the penalty phase of the proceeding, the jury unanimously recommended on each count that defendant be sentenced to death.[1] Defendant's brother, Edward Deboue, was sentenced to life imprisonment on both counts.[2] The matter now before us *358 is Thomas Deboue's direct appeal from his conviction and death sentence.[3]
On appeal defendant urges a total of eight assignments of error (seven designated assignments plus a "supplemental" assignment argued in brief). After considering the issues raised by these assignments of error, and upon an independent review of the record, we affirm the defendant Thomas Mitchell Deboue's conviction for both counts of first degree murder, and uphold the sentence of death.

FACTS
The following facts were established through testimony presented in the guilt phase of the trial.
In the early morning hours of March 30, 1984, between midnight and 12:30 am, Alvin Hite and his wife Loretta were awakened in their apartment on St. Thomas Street in New Orleans by noise from an adjacent apartment in which Bettina Miller, the mother of Nigquika Miller, resided. Hite walked outside to his porch to investigate the noise, and observed that the window screen of Miller's apartment had been torn off and that the window was partially open. After obtaining a gun from his residence, Hite knocked on Miller's apartment door. After some delay, he heard a voice, which he believed to be a man attempting to sound like a woman, respond, "Who is it?"
Hite returned to his apartment and told his wife to call the police. He then observed two black males exit Miller's apartment and run down the fire escape. Hite called for them to stop, and fired a shot when they did not do so. One of the men fell on the stairs and continued to run down the fire escape, limping as he ran.
The officers who responded to Hite's call for assistance testified as follows. When they arrived at the apartment, at about 12:30 am, they found that the front door was locked, but they observed evidence of forced entry through a window. They entered the apartment and found Nigquika Miller, age six, in a bedroom. Her throat had been slashed and she had no pulse. The officers then found Jamal Moore, age eleven, in the apartment's bathroom. The boy was in the bathtub, and scalding water from the tub was running over his face. His throat was slashed, although the officers noted that he was still breathing. Emergency medical assistance arrived but the child stopped breathing as he was being transported down the steps of the apartment building. Shortly thereafter, he was pronounced dead.
Defendant's sister, Lorraine Miller, testified as follows. Shortly after 1:00 am on the night of the murders, she was at her mother's home when Thomas and Edward Deboue arrived there. Defendant told her at that time that he had killed the two children. The next day, Lorraine drove Thomas and Edward Deboue to Biloxi, Mississippi, where they boarded a bus bound for New York City. Prior to the drive to Biloxi, defendant told her that on the night of the murders, he and Edward went to Bettina Miller's apartment to steal money, having lost their money in a dice game earlier in the evening. One of the children awakened after they entered the apartment, and defendant told his sister that he then killed the children because "he did not want to do forty years." Defendant also stated that he killed the children because "he owed the girl," an apparent reference to Nigquika's mother, Bettina Miller.[4] Lorraine asked her brother Edward why he did not stop defendant from killing the children, and Edward responded that "he just panicked and couldn't take no more." Edward also told Lorraine that the little boy (Jamal) fought back and that he (Edward) held the boy.
Other incriminating evidence included the fact that a cane belonging to defendant *359 was found at the bottom of the steps leading from the crime scene. Next to the cane was a razor blade. Other razor blades and a knife were found in the apartment, and were stained with blood that matched the bloodtypes of the victims. A fingerprint belonging to Edward Deboue was found on the door of the apartment bathroom.
As previously mentioned, the defendant and his brother left Biloxi for New York City on a bus the day after the murders. New York authorities were notified by New Orleans police that the Deboue brothers were suspects in the murder. When New York City police officers approached defendant upon his arrival at the bus station in that city and asked him his name, defendant responded, "Stan Williams." The brothers were arrested, informed of their constitutional rights and taken into custody. Afterward, one of the arresting officers remarked to another officer, while defendant was in a nearby holding cell, "How could anyone kill his own kids?" Defendant responded, "They weren't my kids."[5]

GUILT PHASE
Defendant directs five assignments of error to the guilt phase of the trial, each of which is considered below.

Sufficiency of the Evidence

(Assignment of Error No. 2)
Defendant was charged under La. R.S. 14:30 with two counts of first degree murder. The essential elements of first degree murder are the killing of a human being when the offender has specific intent to kill or inflict great bodily harm and commits the murder under one of the circumstances specified under La.R.S. 14:30(A)(1)-(5). The indictment charged that the defendant killed each victim "while attempting to kill more than one person," in violation of La.R.S. 14:30(A)(3). That portion of La.R.S. 14:30 provides that a homicide is first degree murder if perpetrated "[w]hen the offender has the specific intent to kill or inflict great bodily harm upon more than one person."
Defendant generally argues that the evidence was insufficient to support the verdict, and in particular that the state did not prove beyond a reasonable doubt that the defendant intended to inflict great bodily harm upon more than one person at the time the first murder was committed.
The constitutional standard for testing sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Johnson, 541 So.2d 818, 825 (La.1989); State v. Rosiere, 488 So.2d 965, 968 (La. 1986).
The evidence presented by the state at trial, as chronicled above, provided a sufficient basis for a rational trier of fact to find beyond a reasonable doubt that the defendant was the person who killed both children. In addition to other incriminating evidence, defendant's own sister testified that defendant confessed to her that he had committed the murders. Further, the slashing of the children's throats belies any suggestion that the defendant acted without the required specific intent to kill or inflict great bodily harm. See State v. Brown, 514 So.2d 99, 104 (La.1987).
The evidence was also sufficient to support a finding that the defendant committed each murder while acting with "specific intent to kill or inflict great bodily harm upon more than one person" under La.R.S. 14:30(A)(3). This statutory definition of first degree murder is satisfied where "the murderer specifically intended to kill more than one person and actually caused the death of one person and the risk of death or great bodily harm to at least one other person, all by a single act or by a series of acts in a single consecutive course of conduct." State v. Williams, 480 So.2d 721, 726 (La.1985).
*360 Defendant argues that the evidence does not establish that both children were home at the time that the first victim was murdered.[6] He contends that if only one of the children was in the apartment at the time of the first attack (or, if both were there, but defendant, at the time of the first attack, was not aware of the presence of the other), then he could not have acted with specific intent to kill or inflict great bodily harm upon more than one person at the time he committed the first murder. For an additional argument he suggests that the evidence does not establish that the first victim was still alive at the time that the second victim was attacked. If the first victim had already perished by the time of the second attack, he argues, then he could not have committed the second murder with intent to kill or inflict great bodily harm upon more than one person.
We find these "point in time" intent arguments to be unpersuasive under the facts of this particular case. First of all, there was sufficient evidence to support a jury finding that both children were present when defendant broke into the apartment. The description of the crime given to Lorraine Miller by defendant and his brother indicated that both children were in the apartment. Neither said that one of the children arrived after the burglary was in process, or after the first murder was committed. The burglary occurred late at night, and defendant's statement that one of the children woke up after the break-in implies that both were in bed sleeping. Viewing this evidence in the light most favorable to the prosecution, we conclude that the record supports a finding that both children were in the apartment at the time that the first murder was committed.
Secondly, and independently of the considerations discussed in the foregoing paragraph, there was sufficient evidence for the jury to find that defendant, upon breaking into the apartment, intended to kill anyone discovered therein so that there could be no witnesses against him. One of his stated reasons for killing the children was that he "did not want to do forty years." Therefore the jury could have reasonably concluded that the defendant acted throughout the course of the burglary with intent to kill one or more persons, i.e., any and all potential witnesses against him who were present at the scene. In order for the jury to make this determination, it was unnecessary for it to know with certainty which victim was attacked first, whether the defendant knew of the presence of both children in the home at the time that he committed the first murder, or whether the first victim was still alive at the time the second victim was attacked.
In summary, the evidence fully supports a finding that defendant committed both first degree murders.[7]
*361 Denial of Mistrial Motion

(Assignment of Error No. 1)
Defendant moved for a mistrial after the prosecutor made the following comments during opening statement:
They realized that the children were there, they realized that they could not enter the home without being known and without being recognized, they proceeded to revert to the lowest possible form of criminal behavior, the bottom denominator, the rule that dead souls tell no tales, that dead witnesses cannot come into court and identify, and that dead children can never tell what happened
The trial judge denied defendant's motion for a mistrial, but admonished the jury to disregard the prosecutor's comments. In this unbriefed assignment,[8] defendant contends that the trial court erred by not declaring a mistrial because of the prosecutor's comments.
The challenged comments by the prosecutor appear to have been in the nature of argument, and therefore were improper during opening statements. As set forth in La.C.Cr.Proc. art. 766, the state's opening statement shall explain the nature of the charge and set forth in general terms the nature of the evidence by which the state expects to prove the charge. Argument during opening statement is not permitted, and therefore the trial judge correctly admonished the jury to disregard the prosecutor's comments.
However, the prosecutor's comments do not provide a basis for a mandatory mistrial under La.C.Cr.Proc. art. 770, as the remarks were not directed to the defendant's race, religion or national origin, another crime committed by the defendant as to which evidence is not admissible, the failure of the defendant to testify on his own behalf, or the refusal of the judge to direct a verdict. Accordingly, under La.C. Crim.Proc. art. 771, the trial court's admonishing the jury to disregard the remarks was sufficient protection for the defendant, unless the remark was so prejudicial that "an admonition is not sufficient to assure the defendant a fair trial." In the latter event, art. 771 authorizes the trial judge to grant a mistrial.
In this instance, there is no reason why an admonishment to the jury was not sufficient to assure defendant a fair trial. The comments in question were directed to the defendants' alleged motive for the crimes. Though perhaps the prosecutor crossed the sometimes shadowy line between making a forceful opening statement and impermissibly arguing the case, there is no showing of resulting prejudice to defendant. The trial judge properly denied the defense motion for a mistrial. This assignment of error lacks merit.

State's Use of Rebuttal Testimony

(Supplemental Assignment of Error No. 1)
After the state rested its case-in-chief, co-defendant Edward Deboue took the stand and testified on his own behalf. On cross-examination by defendant's attorney, Edward testified that defendant's right side was paralyzed, that he always walked with a limp, that he had difficulty raising his right arm to chest level and that he could not run. After Edward Deboue testified and rested his case, defendant Thomas Deboue rested his case without calling any witnesses.
The state then called Angela Miller, defendant's former girlfriend, as a rebuttal witness. She testified that defendant could use his right side, could run and could even play football. This testimony was allowed over defense objections that it was not proper rebuttal evidence.
In this assignment, defendant urges that the trial court erred by permitting the rebuttal testimony. Defendant's essential argument is that because he called no witnesses *362 as part of his case in chief, there was nothing for the state to rebut.
Rebuttal evidence is that which "has become relevant or important only as an effect of some evidence introduced by the other side." State v. Smith, 120 La. 530, 532, 45 So. 415 (1908). Proper rebuttal evidence is offered to explain, repel, counteract or disprove facts given in evidence by an adverse party. State v. Constantine, 364 So.2d 1011, 1013 (La.1978); State v. Turner, 337 So.2d 455 (La.1976); State v. Monroe, 205 La. 285, 17 So.2d 331 (La. 1944).
The state is allowed to present rebuttal evidence for the reason that it is required to present its case first, and cannot anticipate the exact nature of the defense. State v. Williams, 445 So.2d 1171, 1180-81 (La.1984); State v. Monroe, supra. However, it is well settled that the state may not reserve part of its case-in-chief for rebuttal testimony after the defense has rested. State v. Hatter, 350 So.2d 149, 152 (La.1977).
The testimony elicited from the rebuttal witness, Angela Miller, was classic rebuttal evidence, in that it was offered in direct refutation of testimony by Edward Deboue regarding defendant's alleged physical handicaps. Edward Deboue's testimony was adduced on cross-examination by defendant's attorney, in order to support his argument that the defendant was physically unable to commit the crime. The state had the right to rebut that testimony, and the fact that the testimony was elicited on cross-examination during Edward Deboue's case-in-chief, rather than during defendant's case-in-chief, is irrelevant. The state did not attempt to reserve any part of its case-in-chief in order to surprise defendant, but simply presented testimony which directly contradicted evidence elicited by defendant's attorney. It was proper for the trial court to permit the rebuttal testimony under these circumstances, for the purpose of the rebuttal testimony "was to disprove the defense and contradict the defense witnesses, rather than to prove the State's case." State v. Hatter, 338 So.2d 100, 104 (La.1976). This assignment of error lacks merit.

Jury Instruction on Law of Principals

(Assignment of Error No. Four)
While instructing the jury on the law of principals during the guilt phase of the trial, the trial judge gave the following example, over the objection of defendant's counsel:
Likewise, a defendant who held a person down while a co-defendant stabbed a person to death has been held responsible for the death, even though he never stabbed the victim.
Defendant argues that the trial judge committed reversible error by giving this instruction, which, he contends, constituted an improper comment by the trial judge on the facts of the case. Defendant contends that the trial judge's charge was a reference to prosecution witness Lorraine Miller's testimony that Edward Deboue told her that he held Jamal Moore while defendant stabbed him. Such a direct reference by the trial judge to the testimony of a state witness, defendant argues, had the effect of conveying to the jury that the judge gave credence to the testimony and did not believe defendant's argument that he was physically unable to commit the crime.
The trial judge is prohibited from charging the jury concerning the facts of the case and from commenting on those facts. La.C.Cr.Proc. art. 806. This rule insures that the jury, not the judge, is the fact-finder as regards defendant's guilt or innocence. State v. Hodgeson, 305 So.2d 421 (La.1974): State v. Brevelle, 270 So.2d 852 (La.1972).
Notwithstanding this rule, the trial judge is permitted to instruct the jury on the applicable law, even through an illustration or example that may be pertinent to the particular case. If the example given was legally correct, "the fact that the evidence in the case properly brought it under the illustration given cannot be urged as a comment by the trial judge on the evidence or as furnishing to the jury any conclusion on his part as to the guilt or innocence of *363 the accused." State v. Smith, 124 La. 1035, 1041, 50 So. 842 (1909). See also State v. Dickinson, 370 So.2d 557 (La. 1979); State v. Dominick, 354 So.2d 1316 (La.1978); State v. Garon, 161 La. 867, 109 So. 530 (1926).
The challenged instruction in this case was a legally correct statement and example of the law of principals. La.R.S. 14:24; State v. Landry, 388 So.2d 699 (La.1980). The challenged statement did not amount to a comment on the evidence, but instead was "a proper example to determine whether the jurors understood the concept of `principal' to a crime." State v. Dominick, supra, 354 So.2d at 1321. The determination of whether the defendant's conduct fell within the doctrine of principals was left entirely to the jury to decide. State v. Smith, supra, 124 La. at 1041, 50 So. at 842.
Finally, we note that the trial judge did not single out the stabbing example in explaining the law of principals to the jury. He also gave an example that involved armed robbery.
In summary, the trial judge's instruction was not an improper comment on the evidence. This assignment of error lacks merit.

Comments by Prosecutor in Closing Argument (guilt phase)

(Assignment of Error No. Six)
During the closing argument for the guilt phase of the trial, the prosecutor made the following statements regarding the suffering of the victims:
And think about Naquita Miller [sic] and Jamal Moore, and I'll tell you why you should think about them, the most horrible of all of this. If you think about them, you know that they knew what was going to happen to them before they died. They knew. This wasn't instantaneous. They just didn't die. They laid there and they knew they were going to die. That little girl reached for that telephone. She knew she was going to die. Six years old, and she knew she was going to die.
Jamaal [sic] Moore laid there in that bathtub, hanging on to that policewoman, he knew he was going to die. Eleven years old, he knew he was going to die.
By this assignment, defendant argues that these comments by the prosecutor were not supported by the evidence and were made to encourage the jury not to consider the evidence but to consider the suffering of the children.
We disagree. The prosecutor's comments over the manner of the deaths and the fact that the victims knew they were going to die were proper inferences drawn from the evidence presented at trial. Nor was it improper for the prosecutor to comment on the manner of the victims' deaths, as long as the comments were consistent with the evidence. See State v. Wingo, 457 So.2d 1159 (La.1984); State v. Moore, 432 So.2d 209 (La.1983).
This assignment of error lacks merit.

PENALTY PHASE

Prosecutor's Closing Argument during Sentencing Hearing

(Assignment of Error No. Seven)
During his closing arguments in the penalty phase of the trial, the prosecutor stated:
[T]his community is waiting for you to tell them what you're going to do
Folks, you give them life imprisonment, they win. They'll walk out of here and laugh. They will walk out of here and laugh at you if you give them life imprisonment knowing what they have done and what they have been convicted of.
Defense counsel objected to this comment and the trial judge sustained the objection. The prosecutor continued his argument and made the following statement:
You have an opportunity to speak out and say what you're going to do to two men who have killed these children .... and I ask you to come back down here when you're finished with your deliberations, and I ask you to speak out, speak out and sentence Thomas Edward [sic] Deboue to two counts of death, and Edward James Deboue to two counts of death.
*364 Defendant argues that these remarks by the prosecutor injected an arbitrary factor into the proceedings which requires reversal of the death sentences. Defendant suggests that the prosecutor's remarks led the jury to believe that any sentence other than death "would render the jury ridiculous and foolish in the eyes of the defendants," and that by referring to community sentiments, the prosecutor "improperly turned the proceedings into a plebescite on crime."
Closing argument should be confined to the evidence admitted, lack of evidence, conclusions of fact which may be inferred from the evidence and the law applicable to the case. The argument should not appeal to prejudice. La.C.Cr.Proc. art. 774; State v. Sugar, 408 So.2d 1329 (La.1982).
Prosecutors should not turn closing argument into a plebiscite on crime by making overt references to community sentiment. State v. Sugar, supra; State v. Hayes, 364 So.2d 923 (La.1978). The prosecutor's comment that "the community is waiting for you to tell them what you're going to do" was therefore improper.
It was also improper for the prosecutor to suggest that the defendants would laugh at the jury if they received sentences of life imprisonment. The argument was not based on any reasonable inference that could be drawn from the evidence and implied, wrongly, that a sentence of life imprisonment is not a serious penalty, or that the jury has somehow not fulfilled its function honorably if it returns such a sentence. It was therefore proper for the trial judge to sustain defense counsel's objection to this portion of the prosecutor's argument. Nevertheless, because the jury heard the improper argument prior to the objection, we must consider whether the prosecutor's inappropriate remarks require reversal of the sentence.
Improper or allegedly prejudicial argument requires reversal when it is probable that the jury's verdict was influenced by the remarks. State v. Ford, 489 So.2d 1250, 1263 (La.1986); State v. Jarman, 445 So.2d 1184, 1188 (La.1984); State v. Sharp, 418 So.2d 1344, 1349 (La.1982). When an objection to the challenged remarks is promptly sustained, the likelihood that that the jury was influenced by the remarks in lessened. State v. Sharp, supra, 418 So.2d at 1349. "Credit should be accorded to the good sense and fairmindedness of jurors who have heard the evidence and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence." State v. Kyles, 513 So.2d 265, 276 (La.1987); State v. Dupre, 408 So.2d 1229 (La.1982).
In this case, defense counsel's objection to the improper comments was promptly sustained. The remarks were not of such a nature as to require a mistrial under La.C.Cr.Proc. art. 770. See discussion under assignment of error no. one, supra. Also, as discussed further below, there was ample evidence to support three of the statutory aggravating circumstances found by the jury in the penalty phase. Under these circumstances, we are unable to conclude that the improper arguments influenced the jury's decision to impose the death penalty.[9] This assignment of error lacks merit.

Trial Court's Comments Regarding Defendant's Appeal Rights

(Assignment of Error No. Three)
During its deliberations for the penalty phase of the trial, the jury returned to the *365 courtroom and asked the judge the following question: "The jury would like to know will there be an automatic appeal with death or life?"
The trial judge responded as follows:
Ladies and gentlemen, I will tell you that there is an automatic appeal in this case and the defendant has an appeal in this case, just as he does in any criminal case where a conviction is returned. You should not, however, permit the question of whether or not there is an appeal that is automatic in any way influence your vote in this case.
But the defendant, in any case when convicted has an automatic right of appeal at no cost to defendant. And that's true of you or I or anyone else regardless of the crime for which we are convicted.
But again, that should in no way influence your deliberation.
Relying on Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) and State v. Clark, 492 So.2d 862 (La.1986), defendant argues that the trial judge's response constitutes reversible error because it had the effect of minimizing the responsibility which the jurors perceived that they had for determining the appropriate punishment. We disagree.
Caldwell and Clark hold that the defendant's right to a fair sentencing hearing is compromised if a reference is made to the defendant's appeal rights by the trial judge or the prosecutor, and the reference conveys the message that the jury's "awesome responsibility" with regard to sentencing is lessened by the fact that their decision is not the final one. See also State v. Jones, 474 So.2d 919 (La.1985); State v. Berry, 391 So.2d 406, 418 (La.1980), cert. denied, 451 U.S. 1010, 101 S.Ct. 2347, 68 L.Ed.2d 863 (1981).
However, because "virtually every person of age eligible for jury service knows that death penalties are reviewed on appeal," there is no absolute prohibition against references to this commonly known fact. State v. Berry, supra, 391 So.2d at 418. "[S]uch a reference does not necessarily serve to induce a juror to disregard his responsibility." Id. Unless the reference can be said to have induced the jury to believe that its responsibility was lessened due to the fact of appellate review, there is no reversible error. State v. Knighton, 436 So.2d 1141, 1158 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); State v. Moore, 414 So.2d 340, 347 (La.1982); State v. Mattheson, 407 So.2d 1150 (La.1981); State v. Monroe, 397 So.2d 1258 (La.1981).
In this case, the judge's brief reference to the defendant's appeal rights was not unsolicited, but was made in direct response to a question from the jury. In his answer, the judge twice emphasized that the jury should not concern itself with the defendant's right of appellate review in making its sentencing determination. We cannot conclude that the trial judge's succinct and legally accurate response, acknowledging the commonly known fact that defendant had a right to an appeal, but also instructing the jury not to consider that fact, led the jury to believe that its responsibility for sentencing was in any way diminished.
This assignment of error lacks merit.

Aggravating Circumstances

(Assignment of Error No. Five)
As noted at the outset of this opinion, the jury found the existence of four statutory aggravating circumstances under La.C.Cr. Proc. art. 905.4. We review each of those findings below, as well as the defendant's arguments that they were not supported by the law or the evidence.
Offender Engaged in the Perpetration of Aggravated Burglary (La.C.Cr.Proc. art. 905.4(A)(1)
In order to establish aggravated burglary, the state must prove beyond a reasonable doubt that the offender made an unauthorized entry into an inhabited dwelling with specific intent to commit a felony or theft therein and that the offender was either armed, armed himself after entry, or committed a battery upon a person while entering, inside, or leaving. La. R.S. 14:60. According to Lorraine Miller, *366 defendant and Edward Deboue told her that they broke into the apartment to steal money. When the children awoke, defendant slashed their throats with a razor blade and knife. Police determined that the point of entry was either the window, which was found open with the screen torn off, or the back door of the apartment. Angela Miller testified that when she went to the apartment several days after the murders to remove her sister's belongings, she discovered that a pair of diamond earrings and cash were missing from the apartment.
The foregoing evidence amply supports the jury's penalty phase determination that defendant committed the murders while engaged in the perpetration of aggravated burglary.
Defendant argues on appeal that his mental retardation rendered him incapable of forming specific intent to commit aggravated burglary. In support of this argument, defendant relies on a mental evaluation conducted after trial which indicated that his I.Q. is between 62 and 70, the low to medium range. No evidence of any mental defect was raised by defendant in any pre-trial proceedings or at trial.
Defendant does not contend that he was legally insane at the time of the offense, i.e., incapable of distinguishing between right and wrong with respect to the conduct in question because of a mental disease or defect. See La.R.S. 14:14. Nor was any evidence presented at trial which would indicate that the defendant was incapable of distinguishing between right and wrong at the time of the offense. We have consistently held that a mental defect or disorder short of legal insanity cannot serve to negate specific intent and reduce the degree of the crime. State v. Nelson, 459 So.2d 510 (La.1984); State v. Lecompte, 371 So.2d 239 (La.1978); State v. Weber, 364 So.2d 952, 956 (La.1978); State v. Jones, 359 So.2d 95 (La.1978); State v. Johanson, 332 So.2d 270 (La.1976); State v. Berry, 324 So.2d 822 (La.1975); State v. Rideau, 249 La. 1111, 193 So.2d 264 (1966). Subnormal intelligence does not of itself constitute legal insanity. State v. Brogdon, 426 So.2d 158 (La.1983); State v. Brown, 414 So.2d 689 (La.1982). Therefore, defendant's argument that his low I.Q. prevented him from having the specific intent to commit aggravated burglary lacks merit. In fact the evidence indicates that the defendant's actions, both in entering the apartment for the purpose of stealing money and in committing the murders, were quite deliberate.
Knowing Creation of Risk of Death Or Great Bodily Harm to More than One Person (La.C.Cr.Proc. art. 905.4(A)(4)
As we noted in our discussion of assignment of error number two, the evidence fully supports a finding that the defendant was guilty of first degree murder under La.R.S. 14:30(A)(3), the killing of a human being "[w]hen the offender has specific intent to kill or inflict great bodily harm upon more than one person." Conduct which satisfies La.R.S. 14:30(A)(3) is also sufficient to establish that the defendant "knowingly created a risk of death or great bodily harm to more than one person," the penalty phase aggravating circumstance set forth in La.C.Cr.Proc. art. 905.4(A)(4). State v. Williams, 480 So.2d 721, 726 (La.1985). For the same reasons which led us to conclude that the evidence supported the jury's determination that the defendant had specific intent to kill or inflict great bodily harm upon more than one person, we conclude that the evidence supports the jury's finding in the penalty phase that defendant knowingly created a risk of death or great bodily harm to more than one person.[10] *367 Offense Committed in Especially Heinous, Atrocious or Cruel Manner (La.C. Crim.Proc. art. 905.4(A)(7))
The jury also found the existence of the aggravating circumstance provided by art. 905.4(A)(7), that the offense was committed in an especially heinous, atrocious or cruel manner. We have held that this aggravating circumstance may be satisfied only upon a showing that the murderer engaged in torture or the pitiless infliction of unnecessary pain. State v. Brogdon, 457 So.2d 616 (La.1984); State v. Flowers, 441 So.2d 707 (La.1983); State v. Taylor, 422 So.2d 109 (La.1982); State v. Sonnier, 402 So.2d 650 (La.1981).
In this case, the pathologist testified that the young boy sustained seven incised wounds to his throat. The young girl sustained a single wound on the neck which appeared to be two cuts close together. This wound penetrated completely through her larynx and thyroid gland.
Both children died as the result of blood loss and massive aspiration of blood. The doctor testified that neither child died instantaneously and that each would have lived twenty to twenty-five minutes. The children, then, were left to die slow deaths, drowning in their own blood. The young boy was left with scalding water from the bathtub running across his face, and was still alive when police arrived on the scene. Considering these facts, the jury's finding that the crimes were committed in an especially cruel, heinous and atrocious manner is supported by the evidence. See State v. Eaton, 524 So.2d 1194, 1211 (La.1988); State v. Brown, 514 So.2d 99, 113 (La. 1987).
Defendant argues that this aggravating circumstance was invalidated by the United States Supreme Court in Maynard v. Cartright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). In Maynard, the Supreme Court determined that the Oklahoma courts had unconstitutionally applied that state's aggravating circumstance that a murder was "especially heinous, atrocious or cruel." The Oklahoma courts had found that "the attitude of the killer, the manner of the killing, and the suffering of the victim" were relevant factors which would support this aggravating circumstance, but they had not held that any of these factors must be present before the circumstance could be applied. The U.S. Supreme Court found that the Oklahoma courts' application of the aggravating circumstance rendered it unconstitutionally vague, because juries were not given adequate guidance to distinguish murders for which the death penalty could be imposed from those for which it could not. 108 S.Ct. 1857-59. See also Godfrey v. Georgia, 446 U.S 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).
Maynard, however, does not preclude the application of this aggravating circumstance with a limiting construction, which permits the jury to distinguish those types of murders which qualify as being committed in an especially cruel, heinous or atrocious manner and those which do not. In fact, the United States Supreme Court recognized that one limiting construction which has been employed by other states is the requirement of torture or serious physical abuse, and it implicitly approved that limiting construction by noting that "[w]e also do not hold that some kind of torture or serious physical abuse is the only limiting construction of the heinous, atrocious, or cruel aggravating circumstance that would be constitutionally permissible." Id. at 1859-60 (emphasis added).
As noted above, this Court has repeatedly held that this aggravating circumstance may only be imposed upon a finding that the murder was inflicted through torture or pitiless infliction of unnecessary pain. State v. Brogdon, supra, 457 So.2d at 629-30. This requirement was imposed and satisfied in this case,[11] so the application of *368 this aggravating circumstance is not unconstitutional.
Significant Prior History of Criminal Activity
This aggravating circumstance, formerly codified as La.C.Cr.Proc. art. 905.4(c), was found unconstitutionally vague in State v. David, 468 So.2d 1126, 1130 (La. 1984). When a statutory circumstance is found invalid or not supported by the evidence, a death sentence will be upheld if (1) the evidence is sufficient to support one valid aggravating circumstance and (2) the introduction of evidence on the invalid circumstance did not interject an arbitrary factor into the proceeding. State v. Byrne, 483 So.2d 564, 575 (La.1986); State v. Sawyer, 422 So.2d 95 (La.1982), cert. denied 466 U.S. 931, 104 S.Ct. 1719, 80 L.Ed.2d 191 (1984).
As we have already discussed, the evidence was sufficient to support three other aggravating circumstances. The requirement that the evidence be sufficient to support at least one valid aggravating circumstance is therefore satisfied.
Nor did the evidence introduced in support of the invalid aggravating circumstance ("significant prior history of criminal activity") interject an arbitrary factor into the proceeding. That evidence consisted of the defendant's criminal record (seven prior convictions for various crimes). Even if not admissible in this case to prove a valid aggravating circumstance, the prior convictions were admissible in the penalty hearing to show the character and propensities of the accused. State v. Brown, 514 So.2d 99, 105 (La.1987); State v. Ward, 483 So.2d 578 (La.1986), cert. denied 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 168 (1986); State v. Jordan, 440 So.2d 716 (La.1983). Thus the introduction of this evidence did not inject an arbitrary factor into the proceeding, and the state's reliance on this invalid aggravating circumstance does not require reversal of the death penalty.

CAPITAL SENTENCE REVIEW
Pursuant to La.C.Cr.Proc. art. 905.9 and Rule 28 of our local rules, we review every death sentence to determine whether the sentence is unconstitutionally excessive. This determination is made upon considering whether the sentence was imposed under the influence of passion, prejudice or arbitrary factors; whether the evidence supports the finding of statutory aggravating circumstances; and whether the sentence is disproportionate to the penalty imposed in other cases, considering both the offense and the offender.

Passion, Prejudice and Arbitrary Factors
We have already considered a number of instances in which we determined that the trial court's decision should be upheld. On the question of prejudice, defendant was black and his victims were black. Race was not an issue at trial. After review of the record, we find no evidence of any factor which injected passion, prejudice or arbitrariness into either phase of the bifurcated trial.

Aggravating Circumstances
As noted above, the evidence supports three of the four aggravating circumstances found by the jury, and the invalidity of the fourth does not require reversal of the death sentence. State v. Byrne, supra, 483 So.2d at 575.

Proportionality of Sentence
When a jury's death penalty recommendation is inconsistent with the sentence imposed in similar cases in the same jurisdiction an inference of arbitrariness arises. State v. Glass, 455 So.2d 659 (La. 1984). Thus we review whether the death sentence imposed here is disproportionate to the penalty imposed in similar cases in Orleans Parish, considering both the crime and the defendant.
Orleans Parish juries have voted to impose the death penalty in twenty-two cases since 1976, when the adoption of a bifurcated trial system for first degree murder was held to be constitutional by the *369 United States Supreme Court.[12] Eight of these cases included a jury finding that the offense was committed in an especially cruel, heinous and atrocious manner, sixteen included a jury finding that the murder was committed while the offender was engaged in the perpetration of a felony enumerated in art. 905.4(A)(1), and seven included a jury finding that the defendant knowingly created the risk of death or great bodily harm to more than one person.
This defendant brutally slashed the throats of both victims while engaged in aggravated burglary. Juries from Orleans Parish have recommended the death penalty under similar circumstances. In State v. Monroe, 397 So.2d 1258 (La.1981), the jury recommended the death penalty for a defendant who broke into the victim's home, stabbed the victim seven times and stabbed the victim's eleven year old daughter in the back. The jury found the existence of the same three aggravating circumstances which were found (and upheld) in this case. In State v. Brown, 514 So.2d 99 (La.1987), the jury recommended the death penalty for a defendant who stabbed his victim repeatedly during the perpetration of an armed robbery.
Considering the offenders and offenses represented in Monroe, Brown and other Orleans Parish capital cases, the jury's death penalty recommendation is not disproportionate.

Decree
For the reasons assigned, defendant's conviction and sentence are affirmed for all purposes, except that this judgment shall not serve as a condition precedent to execution as provided by La.R.S. 15:567 until:
(a) defendant fails to petition the U.S. Supreme Court timely for certiorari;
(b) that court denies his petition for certiorari;
(c) having filed for and been denied certiorari, defendant fails to petition the United States Supreme Court timely under the prevailing Rules for rehearing of denial of certiorari; or
(d) that court denies his application for rehearing.
CONVICTION AND SENTENCE AFFIRMED.

APPLICATION FOR REHEARING
PER CURIAM.
We granted a rehearing only for the purpose of amending some statements but not the holding of our original opinion.
The first statement is dictum because it is one "that could have been deleted without seriously impairing the analytical foundations of the holdingthat, being peripheral, may not have received the full and careful consideration of the court that uttered it." Sarnoff v. American Home Products Corp., 798 F.2d 1075, 1084 (7th Cir.1986) (Posner, J.) (quoted in B. Garner, A Dictionary of Modern Legal Usage 185 (1987)).
On original hearing, the court's opinion states that "the jury could have reasonably concluded that the defendant acted throughout the course of the burglary with intent to kill one or more persons, i.e., any and all potential witnesses against him who were present at the scene." [Op. p. 360] The defendant argues that the quoted language could be construed as meaning that this constitutes proof that the defendant intended to inflict great bodily harm on more than one person under La.R.S. 14:30(A)(3). We did not so intend it, but because we recognize this erroneous interpretation is possible, the statement is expressly disapproved and effectively stricken as being unnecessary to the holding.
Defendant correctly points out that on original hearing we applied an incorrect harmless error standard in determining the effect of the prosecution's improper remarks in oral argument. We erroneously stated that an improper and prejudicial argument *370 by the prosecutor requires reversal only "when it is probable that the jury's verdict was influenced by the remarks." [Op. p. 364] The correct rule is that before a reviewing court may declare the erroneous or improper argument of the prosecutor to have been harmless, or not prejudicial, "the state must prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." State v. Smith, 554 So.2d 676 (La.1989).
When we apply the correct standard, however, we reach the same result. The prosecutor's statements that the community was waiting for a jury to tell them what they were going to do and that the defendants would laugh at the jury if it recommended life sentences, instead of death penalties, were not aggravated improprieties. The trial judge correctly sustained defense counsel's immediate objection. The remarks were isolated and were not repeated. Under all of the circumstances in the oral arguments, this improper argument was harmless beyond a reasonable doubt.
For the reasons assigned, but subject to the amendments herein, the decree in this Court's opinion on original hearing, is reaffirmed and reinstated.
NOTES
[1] The jury found the existence of four statutory aggravating circumstances under La.C.Cr.Proc. art. 905.4, as then codified: (1) that the offender was engaged in the perpetration of an aggravated burglary; (2) that the offender knowingly created the risk of death or great bodily harm to more than one person; (3) that the offense was committed in an especially heinous, atrocious or cruel manner and (4) that the offender had a significant prior history of criminal activity.
[2] The jury returned a life sentence recommendation for one of the first degree murder counts on which Edward Deboue was convicted. The jury was unable to make a recommendation as to the second count, resulting in the mandatory imposition of a life sentence on that count under La.C.Cr.Proc. art. 905.8.
[3] Edward Deboue's conviction and life sentence were affirmed on direct appeal to the Louisiana Fourth Circuit Court of Appeal. State v. Deboue, 496 So.2d 394 (La.App. 4th Cir.1986), writ denied, 501 So.2d 229 (La.1987).
[4] Bettina Miller testified that she was late arriving home on the night of the murders because she had car trouble after leaving work. By the time she arrived at her apartment, the police were on the scene.
[5] At trial, Edward Deboue testified on his own behalf, denied killing the children and denied that defendant killed the children. Defendant did not testify.
[6] The pathologist who performed the autopsies on both victims testified that he could not determine which one of the children was attacked first. The evidence does establish that Nigquika Miller died first, but it cannot be determined which victim was attacked first.
[7] For reasons best known to the prosecutors, the state did not seek a first degree murder conviction under any statutory ground other than La. R.S. 14:30(A)(3) (specific intent to kill or inflict great bodily harm upon more than one person). At the close of the guilt phase of the trial, the state did not argue the existence of any other statutory basis for first degree murder (and the jury was not informed of any other possible basis), despite the seemingly obvious availability of another ground, La.R.S. 14:30(A)(1) (specific intent to kill or to inflict great bodily harm while engaged in the perpetration of aggravated burglary). In fact, the jury did find as an aggravating circumstance in the penalty phase that the murders were committed while the offender was engaged in the perpetration of an aggravated burglary, and, as discussed in the text of the opinion, infra, the evidence fully supports that finding. Because the evidence was sufficient to support first degree murder convictions on the single statutory ground urged by the state (specific intent to kill or inflict great bodily harm upon more than one person), the fact that the state did not urge another statutory ground of first degree murder is of no consequence in this case. If the evidence had been insufficient to support the sole statutory ground urged by the state as a basis for convicting the defendant of first degree murder, however, the evidence arguably would not have been constitutionally sufficient to support a conviction for first degree murder. See State v. Johnson, 541 So.2d 818, 827 (La.1989) ("where the evidence is insufficient to establish first degree murder under the only definition of that crime which was argued to the jury, the conviction cannot be upheld based on speculation about what verdict the jury would have returned if it had been informed of a different statutory basis for concluding that the defendant's crime constituted first degree murder.")
[8] Because this is a capital case, we will review all assignments of error, even if unbriefed. State v. Jordan, 420 So.2d 420, 428 (La.1982); State v. Monroe, 397 So.2d 1258, 1272 (La.1981).
[9] In other cases involving similar prosecution arguments, we have declined to reverse the conviction or sentence. See State v. Kyles, supra; State v. Eaton, 524 So.2d 1194, 1208 (La.1988). Be that as it may, prosecutors in future capital cases would be well-advised to avoid engaging in community sentiment arguments, or making disparaging references to the jury's option of returning a life sentence. Such arguments, which this Court has repeatedly found to be improper, needlessly place in jeopardy the validity of convictions or sentences which otherwise are subject to being affirmed on appeal. While we find that reversal of the sentence is not required in this case, similar prosecutorial arguments might require reversal of conviction or sentence in other cases. The determination of whether improper argument influenced the jury verdict will vary from case to case. The impact of any improper argument will always be closely scrutinized by this Court in capital cases, where we independently review the record to determine whether any element of passion or prejudice injected arbitrary considerations into the proceeding.
[10] We noted in State v. Johnson, 541 So.2d 818 (La.1989) that while the same conduct which satisfies La.R.S. 14:30(A)(3)'s definition of first degree murder (specific intent to kill or inflict bodily harm upon more than one person) also satisfies the aggravating circumstance set forth in Art. 905.4(A)(4) (knowingly creating the risk of death or great bodily harm to more than one person), "the reverse is not necessarily true.... The aggravating circumstance set forth in Art. 905.4(A)(4) encompasses a broader range of conduct than the first degree murder definition set forth in La.R.S. 14:40(A)(3)." Id. at 826.
[11] With respect to this aggravating circumstance, the trial judge instructed the jury that a murder is committed in an especially heinous, atrocious or cruel manner if there is "some degree of torture or pitiless infliction of unnecessary pain on the victim of the first degree murder. Generally, physical abuse is necessary with death being brought about in a particularly painful and inhuman matter." R., Supp.Vol. IV at p. 5.
[12] Seventeen of these cases are listed in the state's sentence review memorandum, and we take judicial notice of the following additional cases: State v. Parker, 372 So.2d 1037 (La.1979); State v. Jordan, 420 So.2d 420 (La.1982); State v. Marshall, 414 So.2d 684 (La.1982); State v. Tommy Cage, No. 309-852 and State v. Norvell Smith, No. 311-353.