615 So.2d 948 (1993)
STATE of Louisiana
v.
Kenny YOUNG.
No. 92 KA 0533.
Court of Appeal of Louisiana, First Circuit.
March 5, 1993.
*950 Wayne Ray Chuty, Office of Dist. Atty., Livingston, for plaintiff.
A. Wayne Stewart, Denham Springs, for defendant.
Before WATKINS, CRAIN and GONZALES, JJ.
WATKINS, Judge.
Defendant, Kenny W. Young, was charged by indictment with second degree murder, in violation of LSA-R.S. 14:30.1. After a jury trial, he was found guilty as charged. Defendant was sentenced to serve a term of life imprisonment at hard labor. This appeal follows.

FACTS
On November 30, 1982, defendant twice shot his eighty-three-year-old great-uncle, Penny Kelly, killing him. The following facts were revealed at trial. In an audio taped confession that was played for the jury, defendant stated that, during the early evening hours of November 30, 1982, he stopped at his uncle's home for a visit. During the course of the visit, his uncle began to criticize him for his drug use and told him the woman he was seeing was a "whore." Angered and armed with a gun he had stolen a few weeks earlier from a friend, defendant shot Mr. Kelly in the lower back as Mr. Kelly walked into the kitchen. Defendant then related that, as his great-uncle lay on the floor moaning, defendant shot him again in the head, took $20 from his wallet, and went home for a few minutes. Defendant stated that he left his home, threw the gun into a nearby sewer, and went to a local bar. He also confessed to previously having stolen three checks from his great-uncle and cashing them. The next day, when the body was discovered, defendant, as well as other family members, was questioned generally about the crime. Later that day, attention focused on defendant as a suspect because of the forged checks. Defendant took police officers to his house and showed them where he had hidden the money obtained from the last of the forged checks and told them where they could find the gun.

ASSIGNMENT OF ERROR NUMBER ONE:
In his first assignment of error defendant contends that the trial court erred when it allowed an amendment of the grand jury indictment from first degree murder to second degree murder on the day of trial without a prior written motion. Defendant argues that, although the gravity of the charge was lessened, second degree murder does not require a unanimous verdict, thus giving the state an advantageous procedural position.
*951 Defendant was originally charged by grand jury indictment with first degree murder, as well as five counts of forgery, theft, and armed robbery. He was tried by a jury on those charges, found guilty as charged and sentenced to life imprisonment, 75 years for armed robbery, 15 years for three counts of forgery, and two years for theft, all sentences to run consecutively with the first degree murder sentence. On appeal, this court reversed the theft conviction and vacated the sentence imposed thereon. See State v. Young, 469 So.2d 1014 (La.App. 1st Cir.1985). On post conviction relief, the trial court vacated the first degree murder and forgery convictions because the charges were illegally consolidated. Also, on another post-conviction proceeding, the trial court vacated the armed robbery conviction and the trial court granted defendant's motion for a new trial. Before jury selection on the day of the new trial, the state amended the grand jury indictment from first degree murder to second degree murder.
It is well settled in Louisiana law that district attorneys are empowered to amend indictments to charge lesser offenses; the state may abandon the charge of the greater crime and proceed with the prosecution for the lesser crime, and no formal indictment is necessary for that purpose. The purpose of requiring the state to file an amendment to the indictment is to give defendant notice. It has been held that following the amendment of a grand jury indictment for first degree murder to second degree murder, the defendant could not assert a lack of nature of the crime for which he was charged as amendment of the indictment to the charge of second degree did not alter the notice of the crime charged since all elements of the lesser offense were included within the greater. State v. Davis, 385 So.2d 193, 197 (La. 1980). See also State v. Miller, 448 So.2d 137, 141 (La.App. 1st Cir.), writ denied, 449 So.2d 1355 (La.1984). The amendment to second degree murder on the morning of the trial did not deny defendant the opportunity to prepare an adequate defense under the circumstances of the case before us.
Further, we fail to see how amending the charge to a lesser grade prejudices defendant in any way, regardless of the unanimous vote requirement for jurors to convict of a first degree murder charge versus ten out of twelve votes to convict of a second degree murder charge. For the reasons herein stated, we find this assignment of error meritless.

ASSIGNMENT OF ERROR NUMBER TWO:
In this assignment of error defendant contends that the trial court erred when it denied his motion to quash the indictment on the ground that the charge had prescribed by the passage of time. The crime was committed in November of 1982; on October 26, 1983, defendant was indicted for first degree murder by a grand jury. Defendant proceeded to trial on that charge, along with other charges, was found guilty, and was sentenced to life imprisonment. Through a series of post conviction relief proceedings and an appeal, defendant's convictions were overturned, and he was re-charged with second degree murder on March 25, 1991. Defendant contends that more than three years elapsed since the original first degree murder indictment and the second degree murder indictment and, therefore, the time for prosecuting him prescribed under LSA-C.Cr.P. art. 578.
LSA-C.Cr.P. art. 578 provides, in pertinent part:
Except as otherwise provided in this Chapter, no trial shall be commenced:
(1) In capital cases after three years from the date of institution of the prosecution;
* * * * * *
The offense charged shall determine the applicable limitation.
LSA-C.Cr.P. art. 582 provides:
When a defendant obtains a new trial or there is a mistrial, the state must commence the second trial within one year from the date the new trial is granted, or the mistrial is ordered, or within *952 the period established by Article 578, whichever is longer.
In the instant case, the minutes in the record reveal that defendant was granted a new trial on December 13, 1990. Defendant's new trial date was set for March 25, 1991, and defendant was tried on that day. Therefore, we find that the second trial did commence within the time limitations expressed in LSA-C.Cr.P. art. 582. For the reasons herein stated, this assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER THREE:
In this assignment of error, defendant contends that the trial court erred by not granting a mistrial because the state failed to advise defendant of the content of a statement he made to a state witness as required by LSA-C.Cr.P. art. 716. Alternatively, defendant argues the testimony should have been stricken from the record.
At trial, Albert Kelly, the victim's grandson, testified that he was standing outside the house on the morning the body was discovered when defendant emerged after being questioned by detectives. Albert Kelly testified that he heard defendant say, "Oh, my God, what am I going to do now."
LSA-C.Cr.P. art. 716 B provides:
Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made. (emphasis added)
Article 716 specifically states that the state is not required to inform defendant of the contents of a statement which the state intends to offer into evidence at trial. Further, defendant does not allege or argue that he was prejudiced in any way by the lack of the information about the contents of the statement. Therefore, for the reasons herein stated, this assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER FOUR:
In this assignment of error, defendant contends that the trial court erred when it did not grant defendant's motion for a mistrial when the jury was shown photographs prior to their being admitted into evidence. We note that defendant assigned this issue as error and listed it in brief but did not argue it in brief. Under the Uniform Rules-Courts of Appeal, Rule 2-12.4, it is considered abandoned. Moreover, had this assignment been briefed, it would have no merit because the jury did not view any photographs that were not subsequently admitted into evidence. This assignment is meritless.

ASSIGNMENT OF ERROR NUMBER FIVE:
In this assignment of error, defendant contends that the trial court erred in denying defendant's motion for a mistrial when it ruled that photographs of the victim, Penny Kelly, were admissible. Specifically, defendant alleges that the photographs of Mr. Kelly after the autopsy were gruesome, had no probative value, and were extremely prejudicial to him.
There are two photographs which depict Mr. Kelly's skull, with the brain removed, showing the trajectory of the bullet. At trial, the wife of Mr. Kelly's grandson testified that, when she found the body face down in his home, she assumed Mr. Kelly, who was elderly, had died of a heart attack. Mr. Kelly's grandson testified that when he arrived at the scene, he too assumed his grandfather had died of a heart attack. It was the funeral home mortician, when preparing the body for burial, who discovered the gunshot wound to the head and called the coroner. It was the coroner, during the autopsy, who discovered the gunshot wound in Mr. Kelly's lower back.
In his confession, defendant admits shooting Mr. Kelly in the back, hearing him moaning, and then shooting him in the head. The coroner and the pathologist, both of whom examined the body, testified that the head wound killed Mr. Kelly.
*953 A trial court's admission of allegedly gruesome photographs will be overturned on appeal only if the prejudicial effect of the photographs clearly outweighs their probative value. The Louisiana Supreme Court has held that it will not find that photographic evidence was admitted in error unless the photographs are so gruesome as to overwhelm the jurors' reason and lead them to convict the defendant without sufficient other evidence. State v. Perry, 502 So.2d 543, 559 (La.1986), cert. denied, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987). LSA-C.E. art. 403. The photographs of murder victims are admissible to prove corpus delicti, to identify the victims, to corroborate the cause of death, and to show location, placement, and severity of wounds. State v. Perry, 502 So.2d at 559.
We find the photographic evidence was relevant and probative in proving the state's case against this defendant. The photographs proved corpus delicti, corroborated the cause of death (that indeed the victim did not die of natural causes), confirmed the type of weapon used, and depicted the location and severity of the wounds. For the reasons herein stated, this assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER SIX:
In this assignment of error, defendant contends that the trial court erred when it allowed references to other crimes evidence, specifically, forgeries. Defendant argues that evidence of his forging and cashing three of his great-uncle's (the victim's) checks is irrelevant.
LSA-C.E. art. 404 B provides, in pertinent part:
[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
In closing argument, defendant's counsel argued that defendant killed the victim as a result of an argument and that the jury should return with a verdict of manslaughter. The state did not introduce the evidence of the forgeries to prove that defendant was a "bad man" but to prove that defendant had a motive and intent to kill the victim. The state's theory was that defendant killed the victim either because he was afraid that his great-uncle would find out about the forgeries or because defendant and his great-uncle had a confrontation about the forgeries. We find that the evidence about the forgeries was admissible to prove defendant's motive and intent to kill the victim. This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER SEVEN:
In this assignment of error, defendant contends that the trial court erred in denying a mistrial or in asking the jury to disregard a remark made by the prosecutor in closing argument. In closing argument, the prosecutor stated, "I had a daughter that was killed and I can tell you if somebody is at fault they need to pay. If you think this man is not guilty, turn him loose." Defense counsel objected; the trial court instructed the jury, during the jury charge which immediately followed, that what lawyers say during closing argument is not to be considered as evidence.
LSA-C.Cr.P. art. 774 provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
The argument shall not appeal to prejudice, and the trial court correctly instructed the jury that the prosecutor's remark was not to be considered as evidence. However, the prosecutor's remark did not provide *954 a basis for a mandatory mistrial under LSA-C.Cr.P. art. 770, as the remark was not directed to the defendant's race, religion or national origin, another crime committed by the defendant as to which evidence was not admissible, the failure of the defendant to testify on his own behalf, or the refusal of the judge to direct a verdict. State v. Deboue, 552 So.2d 355, 361 (La. 1989), cert. denied, 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 174 (1990).
Although the prosecutor's remark was improper, allegedly prejudicial or improper argument requires reversal only when it is probable that the jury's verdict was influenced by the remark. State v. Deboue, 552 So.2d at 364. In the instant case, the only potential defense suggested by defendant was that his crime was manslaughter. However, the jury heard the evidence, including defendant's own confession that he shot the victim once in the back and, while the victim lay moaning, shot him fatally in the head. In light of this overwhelming evidence that defendant's actions were not the result of adequate provocation or heat of passion, we are convinced that the prosecutor's remark did not affect the jury's verdict of second degree murder as opposed to manslaughter. For the reasons herein stated, this assignment of error is meritless.
We have discovered a patent sentencing error. Neither the minutes nor the sentencing transcript show that the trial court, in imposing sentence, gave defendant credit for time spent in actual custody prior to sentencing. Such allowance of credit is mandatory. LSA-C.Cr.P. art. 880. Patent sentencing error occurs when the trial court fails to specify credit for time served. State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). Accordingly, we find patent sentencing error and amend the sentence to reflect that defendant is to be given credit for time served prior to the execution of his sentence. See LSA-C.Cr.P. art. 882 A. Resentencing is not required; however, we remand this case and order the district court to amend the commitment and minute entry of the sentence to reflect that defendant is given credit for time served.
CONVICTION AFFIRMED AND SENTENCE AMENDED; REMANDED WITH ORDER.