663 So.2d 296 (1995)
STATE of Louisiana, Plaintiff-Appellee,
v.
Jessie James OFFORD, Defendant-Appellant.
No. 95-290.
Court of Appeal of Louisiana, Third Circuit.
October 4, 1995.
*297 Richard Phillip Ieyoub, Baton Rouge, Morgan J. Goudeau, III, Donald J. Richard, Asst. Dist. Atty., Opelousas, for State of Louisiana.
Daniel James Stanford, Eunice, for Jessie James Offord.
Before COOKS, WOODARD and AMY, JJ.
*298 WOODARD, Judge.
This appeal arises from the defendant's conviction of second degree murder.

FACTS
On the evening of May 23, 1993, Fayetta McCardell, a neighbor of the victim's girlfriend, Jozetta Tyler, agreed to sell Ms. Tyler some furniture for $10.00. Ms. McCardell brought the furniture to Ms. Tyler's residence, but Ms. Tyler did not have the money at that time and stated that she would get it soon. Ms. McCardell left the furniture with Ms. Tyler.
After leaving Ms. Tyler's residence, Ms. McCardell met Rachel Bellard, defendant's girlfriend, and asked her if she was interested in buying the furniture. Ms. Bellard and defendant agreed to buy a chair from Ms. McCardell. The three then walked back to Ms. Tyler's apartment to get the chair, accompanied by a fourth person, Kerrie Don Semaire. Even though Ms. Tyler was not home, defendant entered the residence to retrieve the chair.
At this point, Ms. Tyler returned and began cursing defendant and the others for entering her apartment. She handed $10.00 to Ms. McCardell and ordered everyone to leave. As defendant was leaving, the victim, Johann Ledet, emerged from Ms. Tyler's residence and began cursing. Twenty to forty minutes later, at approximately 10:35 p.m., defendant returned to Ms. Tyler's apartment and shot the victim, killing him.
On June 16, 1993, defendant was indicted for the first degree murder of Johann Ledet, in violation of La.R.S. 14:30(A)(3). On April 4, 1994, the State filed a bill of information charging defendant with the second degree murder of Ledet, in violation of La.R.S. 14:30.1. A jury was selected, impaneled, and sworn on April 5, 1994, and the trial court advised the jurors to report back on April 20, 1994 for trial.
On April 19, 1994, defendant moved to quash the bill of information, alleging that the second degree murder charge should have been instituted by indictment since it is punishable by life imprisonment. La.Code Crim.P. art. 382. At the hearing on the motion to quash on April 20, 1994, the state amended the original indictment from first degree to second degree murder. Defendant objected, arguing that the state's action was untimely because it constituted a substantive amendment to the indictment attempted after the jury had been selected. The trial court overruled the objection and denied the motion to quash. Defendant did not request a mistrial, and trial on the merits commenced.
The jury convicted defendant of second degree murder. The trial court sentenced him to life in prison without benefit of parole, probation, or suspension of sentence, as mandated by statute. Defendant now appeals his conviction.

ERROR PATENT
La.Code Crim.P. art. 880 provides that when imposing sentence, the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence, even when the defendant is sentenced to imprisonment for life. State v. Howard, 626 So.2d 459 (La.App. 3 Cir.1993). The record indicates that the trial court did not do so in the case sub judice. Thus, we amend the sentence to reflect that defendant is given credit for time served prior to the execution of the sentence. See La.Code Crim.P. art. 882(A). Resentencing is not required; however, we remand this case and order the district court to amend the commitment and minute entry of the sentence to reflect that defendant is given credit for time served. State v. Moore, 93-1632 (La.App. 3 Cir. 5/4/94), 640 So.2d 561, writ denied, 94-1455 (La. 3/30/95), 651 So.2d 858.

ASSIGNMENT OF ERROR NO. 1
By this assignment, defendant argues that the trial court erred in allowing the state to amend the indictment from first degree murder to second degree murder after jury selection was completed.
Prosecution for an offense punishable by life imprisonment must be instituted by indictment by a grand jury. La.Code Crim.P. art. 382(A). An indictment is not invalidated *299 by a defect or imperfection in a matter of form only, and the court may at any time cause the indictment to be amended regarding any such formal defect. La.Code Crim.P. art. 487(A). The court may also order an indictment amended with concerning a defect of substance at any time before trial begins, but a mistrial must be ordered if such a defect is discovered after trial has begun. Id. A jury trial commences when the first prospective juror is called for examination. La.Code Crim.P. art. 761.
Defendant argues that the amended indictment constitutes a defect of substance, and therefore that the court should have granted him a mistrial pursuant to La. Code Crim.P. art. 487(A). A "defect of substance" is a defect that prejudices the defendant. State v. Harris, 478 So.2d 229 (La. App. 3 Cir.1985), writ denied, 481 So.2d 1331 (La.1986). The purpose of requiring the state to file an amendment to the indictment before trial is to provide the defendant with adequate notice of the crime for which he is charged so that he can properly prepare his defense. State v. Young, 615 So.2d 948 (La. App. 1 Cir.), writ denied, 620 So.2d 873 (La.1993). Thus, a defendant suffers no prejudice when the indictment against him is amended from first degree to second degree murder, because all elements of the lesser offense, second degree murder, are included within the greater offense, first degree murder, and therefore defendant cannot claim that he lacks notice of the crime with which he is charged. Id. Further, defendant and his counsel were obviously aware that he was to be tried for murdering Johann Ledet on the night of May 23, 1993. Thus, he suffered no prejudice from the amended indictment, and therefore the indictment does not suffer from a defect of substance. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2
By this assignment, defendant alleges that the evidence adduced at trial was insufficient to support his conviction for second degree murder.
Second degree murder is the killing of a human being when the offender possesses the specific intent to kill or inflict great bodily harm. La.R.S. 14:30.1(A)(1). Defendant raised a justification defense, "justifiable homicide" to this charge. A homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm, and that the killing is necessary to save himself from that danger. La.R.S. 14:20(1). When a defendant raises this defense, the state bears the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. State v. Williams, 617 So.2d 557 (La.App. 3 Cir.), writ denied, 623 So.2d 1331 (La.1993).
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). Resolution of a conflict in the testimony rests solely within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3 Cir.), writ denied, 507 So.2d 226 (La.1987). Only irrational decisions to convict may be overturned. State v. Mussall, 523 So.2d 1305 (La.1988). It is the factfinder's role to determine the witnesses' relative credibility; and therefore, the appellate court should not review credibility determinations made by the trier of fact other than through the sufficiency evaluation under the Jackson standard of review. Graffagnino, 436 So.2d 559.
Defendant claimed that he went to Ms. Tyler's apartment on the evening of May 23 solely to "patch things up" with the victim, whom he considered a friend. However, Ms. Tyler answered the door, holding a gun. She began to curse defendant, and when the victim approached the door, she tried to hand him the gun. Defendant grabbed for the gun, and the three began to struggle. The gun was fired four times during the melee, and one round struck the victim in the left *300 eye, killing him. Defendant then picked up the gun and left.
Ms. Tyler disputed this testimony. She testified that the victim, not she, answered the door. Although she could not see defendant at first, she saw him fall after the first shot was fired. She stated that defendant fired three more shots in a downward direction at the victim before walking away. According to her version of events, no struggle took place.
Another state witness, Samuel Jones Bell, lives in the unit across the street from Ms. Tyler's. He testified that he heard arguing outside as he was using the bathroom, so he opened his window and saw a long-haired man in Ms. Tyler's doorway. He could not see the man's face or the gun, but he heard the gunshots. Mr. Bell testified that he went outside through his back door, and saw defendant coming around the side of the house, mumbling "trash talk," and putting a gun into his pants.
Lt. Ronnie Trahan, Sr. of the Opelousas Police Department testified regarding the three pistol rounds that missed the victim. One struck the brick wall on the west (left) side of Ms. Tyler's doorway. Another struck above the doorway and apparently went into the roof area. The other bullet entered the ceiling inside the residence.
Final assessment of evidence in the case sub judice is essentially a credibility determination, due to the considerable inconsistency among the witnesses' statements. Among the more obvious conflicts is that between the physical evidence and Ms. Tyler's testimony. The pattern of the bullets is consistent with defendant's testimony that the parties struggled for the gun, and certainly inconsistent with her testimony that defendant fired three downward shots.
Defendant's testimony also contained several inconsistencies. On direct, he indicated that he wrested control of the gun from Ms. Tyler: "And then, we got the gun again, and we started tussling. It was still in my hand, and the gun fired, and he fell...." However, later, on cross-examination, he specifically claimed that the gun was still in Ms. Tyler's hand when every shot was fired. Additionally, upon viewing the police videotape of the crime scene, which depicts the victim lying across the doorway, we note that there was little room at the crime scene for the kind of three-way struggle that defendant describes.
Several witnesses gave conflicting testimony as to the initial encounter; namely, who cursed whom and who actually went inside Ms. Tyler's house to get the chair. Ms. Tyler testified that defendant threatened the victim during the argument over the furniture, but defendant claimed that he and the victim did not engage in a direct dispute. Ms. Bellard gave testimony that was generally favorable to defendant, but she also testified that she had seen him and another man handling guns earlier in the day of the shooting. Defendant claimed that the man was merely trying to sell him a gun.
Conclusions regarding these inconsistencies and contradictions require a credibility determination. The jury observed all of the witnesses and the evidence, including facts bearing on credibility. The jurors were made aware of Ms. Tyler's dislike for defendant, which apparently predated this offense, as well as the victim's earlier plea of guilty to aggravated battery. They heard defendant's testimony that the victim was a dangerous man who had used weapons in the past. Thus, the jury had a broad palette of evidence with which to work. No witness presented a clear, uncontradicted picture of what happened at the time of the shooting, but viewing the evidence in the light most favorable to the prosecution, we cannot say that the jury's verdict was irrational. Therefore, this assignment is without merit.

CONCLUSION
For the foregoing reasons, we affirm defendant's conviction of second degree murder. We remand and order the trial court to amend the commitment and minute entry to give defendant credit for time served.
AFFIRMED AND REMANDED WITH ORDER.