I,DOUCET, Chief Judge.
Shannon Scott Touchet was originally charged by grand jury indictment with first degree murder, but the charge was later amended to second degree murder. The Defense filed two motions to suppress, which were denied by the trial court after a hearing held June 6, 2002. Jury selection in the case commenced August 8, 2002, and the following day, the Defendant was found guilty as charged. The Defense waived the sentencing delays and the Defendant was sentenced to life imprisonment at hard labor without the benefit of *747 parole, probation or suspension of sentence.
On appeal, defense counsel has filed a motion to withdraw as counsel of record pursuant to the procedures outlined in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The Defendant filed a pro se brief, alleging three assignments of error. For the following reasons, we grant defense counsel’s motion to withdraw and affirm the Defendant’s conviction and sentence.

FACTS:

On March 18, 1998, Shannon Touchet, Ronald Benson and Reginald Basile borrowed their Mend Nicholas Domingue’s car and drove from Lake Charles to the newly-constructed home of Ronald and Rosanna Shaw in Youngsville with the intent to rob the Shaws. The Defendant, Shannon Touchet, had worked on the construction of the home and shared information regarding the victim’s wealth with Benson and Basile. The three men planned the robbery approximately two weeks before it was carried out and the plan involved the possible murder of Ronnie Shaw.
On the night of the robbery, the three men left Lake Charles with a bag containing two loaded guns belonging to Benson and Basile, and three ski masks. The plan was that the Defendant was to stay outside while Benson and Basile went | ¡jnside the house to “get the money.” The three men hid behind the garage and when the Shaws returned home from grocery shopping, they were confronted outside their home by the three masked men. Benson approached Mr. Shaw, whose arms were full of grocery bags, and shot him twice. Ba-sile then shot him once more. Benson ordered Mrs. Shaw at gunpoint to retrieve her husband’s keys. She then opened the door and entered the house. She was taken at gunpoint to the closet in the master bathroom and was ordered to open the safe located there. After the contents of the safe were removed, Mrs. Shaw was led to the kitchen where she begged for her life. She was then locked in an area of the bathroom (the “toilet closet”) and the assailants left.
According to the Defendant’s statement, when Basile and Benson entered the house with Mrs. Shaw, he ran and got the car, which had been parked a distance away. The Defendant admitted receiving about three or four hundred of the five thousand dollars taken from the Shaws’ home.

ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. Our review of the record reveals no errors patent.

MOTION:

In State v. Benjamin, 673 So.2d 528 (La.App. 4 Cir.1990), the Fourth Circuit set forth the appropriate procedures for an appellate court to analyze an An-ders case:
When appointed counsel has filed a brief indicating that no non-Mvolous issues and no ruling arguably supporting an appeal were found after a conscientious review of the record, Anders requires that counsel move to withdraw. This motion will not be acted on until this court performs a thorough independent review of the record after providing the appellant an opportunity to file a brief in his or her own behalf. This court’s review of the record will consist of (1) a review of the bill of information or indictment to insure the defendant was properly charged; |3(2) a review of all minute entries to insure the defendant was present at all crucial stages of the proceedings, the jury composition and verdict were correct and the sentence is legal; (3) a review of all plead *748 ings in the record; (4) a review of the jury sheets; and (5) a review of all transcripts to determine if any ruling provides an arguable basis for appeal.
Id., at 531.
This court has performed an independent, thorough review of the record, including pleadings, minute entries, the bill of information and transcripts. The Defendant was originally charged by grand jury indictment with first degree murder. The State subsequently amended the charge to second degree murder, which is permissible. See State v. Offord, 95-290 (La.App. 3 Cir. 10/4/95), 663 So.2d 296. The Defendant was present at all crucial stages of the proceedings and he was convicted by a unanimous verdict of the charged offense. The Defendant subsequently received a mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence. We find no issue which would arguably support an assignment of error on appeal. We now address those issues raised by the Defendant in his pro se brief.

ASSIGNMENT OF ERROR NO. 2:

The Defendant contends he had only the intent to commit robbery, not murder and the State has “transferred specific intent to kill to this Petitioner.” Because this issue concerns the sufficiency of the evidence presented at trial, we have addressed it first in accordance with State v. Hearold, 603 So.2d 731 (La.1992).
Specific intent to kill was not a necessary element for the State to have proved at trial. .“Unlike first degree murder, no intent to Mil or inflict great bodily harm is necessary to be a principal to second degree murder occurring during the course of a robbery.” State v. Logan, 36,042, p. 9 (La.App. 2 Cir. 6/14/02), 822 So.2d 657, 14663. The felony-murder doctrine is set forth in La.R.S. 14:30.1(A)(2)(a) as follows:
A. Second degree murder is the killing of a human being:
(2)(a) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated Mdnapping, second degree Mdnapping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to Mil or to inflict great bodily harm.
The law of principals is contained in La.R.S. 14:24:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
This court reviewed the standard for reviewing claims of insufficient evidence in State v. Kennerson, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371, appeal after remand, 97-1682 (La.App. 3 Cir. 6/3/98), 715 So.2d 518, stating as follows:
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate *749 court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559 (citing State v. Richardson, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.
|sWe find there was ample evidence to prove beyond a reasonable doubt that the Defendant was a principal to the armed robbery and murder of Ronnie Shaw. Although the Defendant testified at trial that Benson led the “whole ordeal” and that he (the Defendant) “pretty much didn’t want to do it,” he admitted that he provided information regarding the victim’s wealth and went along with the plan to rob the Shaws. Additionally, Nicholas Domingue testified the Defendant told Domingue that Mr. Shaw was very rich and “it would be a good opportunity to jack [rob] him.” The Defendant showed Benson and Basile where the Shaws lived and was aware of the possibility that Benson would kill Mr. Shaw. Additionally, as the trio was leaving for Lafayette, the Defendant brought from his house the bag containing two loaded guns belonging to Benson and Basile and three ski masks to be used in the robbery. Finally, the Defendant drove the getaway car and shared in the proceeds of the robbery. Considering the Defendant’s involvement, we find there was sufficient evidence to convict the Defendant as a principal to the second degree murder of Ronnie Shaw. Thus, we find this claim has no merit.
The Defendant also contends in this assignment of error, “[t]he records (sic) also reflects that Petitioner was in a drug induced state at the time of the crime.” In the August 6, 1998, statement, the Defendant said that he had some marijuana in the bag containing the guns and ski masks and, later in the statement, he admitted to recreational use of the drug. However, the Defendant does not point to, nor did we find, any evidence that the Defendant was in a “drug-induced state” at the time of the offense.

ASSIGNMENT OF ERROR NO. 1:

The Defendant claims a portion of his statement to police was involuntary and |fithat the issue should have been argued by counsel on appeal. The Defendant appears to additionally argue that the confession was a product of police misconduct.
During his confession, the Defendant initially acknowledged that he had previously informed the officer (prior to the recorded statement) that Benson said he was going to have to kill Mr. Shaw. Later in the confession, the Defendant said Benson did not actually say he wanted to kill Mr. Shaw. However, the Defendant subsequently admitted again that he did tell the officer earlier that Benson said he was going to have to kill Mr. Shaw. At trial, the Defendant was questioned about his conflicting statements. He testified that Benson never expressed an intent to kill Mr. Shaw and that the detectives had trained him [the Defendant] what and what not to say.
At the hearing on the Defendant’s motion to suppress, Sergeant Allen Venable, of the Lafayette Parish Sheriffs Office, testified that the Defendant was arrested at his home in Lake Charles on August 6, 1998, and transported to Lafayette, where he was questioned. Sergeant Venable testified that he advised the Defendant of his rights and that he posed no questions to the Defendant prior to doing so. Sergeant Venable filled out the waiver of rights form with the Defendant, which the Defendant signed. According to Sergeant Vena- *750 ble, the Defendant was questioned after being advised of and waiving his rights. During questioning, the Defendant was very cooperative and no pressure was used or promises made to obtain a statement. Later in the morning, the Defendant gave a recorded statement to Sergeant Venable and Detective Arthur Lebreton.
Detective Lebreton testified that prior to taking the recorded statement from the Defendant, he too advised him of his rights, which the Defendant waived. The 17Pefendant proceeded to answer the questions posed to him and did not, at any time, request an attorney. According to Deputy Lebreton, the Defendant did not appear to be under duress or under the influence of any alcohol or medication and he appeared to understand what he was doing. Deputy Lebreton testified that the Defendant was not promised anything in exchange for his statement.
We find the evidence shows the Defendant’s statement was given freely and voluntarily. The issue of “police misconduct” was explored at trial. After the Defendant gave the aforementioned testimony regarding his knowledge of the plan to kill the victim, the State called Sergeant Vena-ble as a rebuttal witness. Sergeant Vena-ble testified that, after advising the Defendant of his rights, he was advised that the Defendant wished to speak to someone. At the time, Detective Lebreton was interviewing one of the other suspects. Sergeant Venable testified that he spoke to the Defendant, but did not tell the Defendant what to say or how to say it.
On cross-examination, Sergeant Venable testified that, in talking to the Defendant prior to the recorded statement being taken, the Defendant said that Benson did not say that the plan was to kill the victim no matter what. The Defendant told Sergeant Venable that Benson said they would kill the victim if they had to.
The jury apparently found Sergeant Venable’s testimony credible, and it is not this court’s role to assess the credibility of the witnesses. Thus, we find the Defendant’s claim that he was coached as to what to say in his recorded statement mer-itless.

ASSIGNMENT OF ERROR NO. 3:

In this assignment of error, the Defendant discusses the evolution of Anders pri- or to arguing that “counsel had enough evidence in the records to successfully I amount a defense — state counsel took the short-cut and abandoned the Petitioner.” He additionally contends that his counsel’s failure to raise any arguable issues on appeal “created presumption of prejudice prong of defendant’s claim of ineffective assistance of counsel. In that, defendant was essentially left without representation on appeal.” These are very general allegations which present nothing for this court to review. Accordingly, they are denied.

DECREE:

We find the Defendant’s pro se claims lack merit and, after our review of the record, we find there are no claims which arguably support an appeal. Thus, we affirm the Defendant’s conviction and sentence and grant counsel’s motion to withdraw.
AFFIRMED. MOTION TO WITHDRAW GRANTED.