931 So.2d 432 (2006)
STATE of Louisiana, Appellee
v.
Benjamin WRIGHT, Appellant.
No. 40,945-KA.
Court of Appeal of Louisiana, Second Circuit.
May 19, 2006.
Rehearing Denied June 23, 2006.
*436 Culpepper & Carroll by Bobby L. Culpepper, Jonesboro, for Appellant.
J. Schuyler Marvin, District Attorney, John Michael Lawrence, Assistant District Attorney, Charles A. Smith, Assistant District Attorney, for Appellee.
Before GASKINS, PEATROSS and LOLLEY, JJ.
LOLLEY, J.
The defendant, Benjamin Wright ("Wright"), appeals the judgment of the 26th Judicial District Court, Parish of Webster, State of Louisiana. Wright was convicted of three counts of video voyeurism. Wright was sentenced to serve five years' imprisonment at hard labor on count one, ten years on count two and ten years on count three without benefits, with the sentences to be served concurrently. We affirm the convictions but vacate the sentences and remand for resentencing.

FACTS
On March 18, 2004, the defendant, Benjamin Wright, was arrested pursuant to an arrest warrant for an unrelated charge. When the police stopped Wright's vehicle to make the arrest, they found a box of 17 videotapes in the trunk. Pursuant to a search warrant, closer inspection of the videotapes revealed many were pornographic, and some were of female customers changing clothes in the dressing room at Wright's clothing store. Also seized was a videotape of a television show newscast dealing with a video voyeurism case and the fact that at that time Louisiana did not have a law prohibiting video voyeurism. Louisiana enacted a video voyeurism law in 1999.
Wright was charged by amended bill of information with two counts of video voyeurism involving a child under the age of 17, a violation of La. R.S. 14:283(B)(4), and one count of video voyeurism, a violation of La. R.S. 14:283(B)(3). At Wright's trial, police officers testified regarding the circumstances surrounding the defendant's arrest and the subsequent seizure of the videotapes and searches.
At trial, victims S.H. and E.C. testified that they both tried on clothes, including bathing suits, in the dressing room while Wright was at the store counter. When *437 Wright later left the store for a short time, the girls discovered a monitor hidden behind the counter. They flipped through the channels and saw that one view was of the inside of the dressing room. Upon close inspection of the dressing room, they slid a mirror to the side and discovered a hole in the wall with a camera inside. S.H. and E.C. identified themselves in a dressing room videotape, one of the many discovered in Wright's car, and stated that they were unaware that they were being videotaped by Wright and denied ever giving Wright permission to videotape them. S.H. and E.C. then made a complaint to the police. E.C. was 12 years old at the time of the offense.
Another victim, C.G., who was 15 years old at the time of trial, testified that she shopped in Wright's store in 2003. She identified herself in a dressing room videotape and stated that she was unaware that she was being videotaped by Wright and denied ever giving Wright permission to videotape her. The dressing room videotapes of the victims and the television show newscast videotape were shown to the jury.
Wright testified on his own behalf. He admitted that he was arrested in August of 1996 for having cameras in the dressing room of another store, his T-shirt shop, and for selling pornographic videotapes. He explained that the charges were dismissed in spring of 1999 and denied having any cameras in any dressing room since 1996. Wright acknowledged that the television show newscast videotape was his, but that it was in his store. He denied ever seeing the box of 17 videotapes, and Wright explained that the video cameras were to prevent shoplifting.
Wright was convicted, as charged, of three counts of video voyeurism. He was sentenced to serve five years' imprisonment at hard labor on count one, ten years on count two, and ten years on count three without benefits, to be served concurrently. His motion to reconsider sentence was denied, and this appeal ensued.

DISCUSSION
Since 1999, the Louisiana legislature has been a leader in addressing the relatively new offense known as video voyeurism and providing a legal remedy for victims of this unacceptable invasion of privacy. Although there is no physical contact, video voyeurism is nonetheless a violation of the same personal nature. Ultimately this offense is a betrayal of our societal trust and must be dealt with accordingly. Several other states have followed in our legislation's footsteps, and the federal government has, in turn, mirrored the Louisiana statute to make video voyeurism a federal crime. Louisiana Revised Statutes 14:283 states, in pertinent part:
A. Video voyeurism is:
(1) The use of any camera, videotape, photo-optical, photo-electric, or any other image recording device for the purpose of observing, viewing, photographing, filming, or videotaping a person where that person has not consented to the observing, viewing, photographing, filming, or videotaping and it is for a lewd or lascivious purpose; or
(2) The transfer of an image obtained by activity described in Paragraph (1) of this Subsection by live or recorded telephone message, electronic mail, the Internet, or a commercial online service. B.
* * *
(3) Whoever commits the crime of video voyeurism when the observing, viewing, photographing, filming, or videotaping is of any vaginal or anal sexual intercourse, *438 actual or simulated sexual intercourse, masturbation, any portion of the female breast below the top of the areola or of any portion of the pubic hair, anus, cleft of the buttocks, vulva, or genitals shall be fined not more than ten thousand dollars and be imprisoned at hard labor for not less than one year or more than five years, without benefit of parole, probation, or suspension of sentence.
(4) Whoever commits the crime of video voyeurism when the observing, viewing, photographing, filming, or videotaping is of any child under the age of seventeen with the intention of arousing or gratifying the sexual desires of the offender shall be fined not more than ten thousand dollars and be imprisoned at hard labor for not less than two years or more than ten years without benefit of parole, probation, or suspension of sentence.
* * *
Wright raises several assignments of error which this court will now address.

Sufficiency of the Evidence
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. Wright properly raised sufficiency of evidence by a motion for post-verdict judgment of acquittal. State v. Howard, 31,807 (La.App. 2d Cir.08/18/99), 746 So.2d 49, writ denied, 1999-2960 (La.05/05/00), 760 So.2d 1190.
In order to convict Wright of the two counts of Video Voyeurism of a Juvenile, La. R.S. 14:283(B)(4), the state is required to prove beyond a reasonable doubt that defendant (1) used an image recording device for the purpose of observing, viewing, photographing, filming, or videotaping another person; (2) that the person did not consent to being observed, photographed, or videotaped; (3) that the conduct was done for a lewd or lascivious purpose; and (4) that the child being observed, photographed, or videotaped was under the age of seventeen years and for the intent to arouse or gratify the offense's sexual desires. For purposes of La. R.S. 14:283(B)(3), in this case, the state must show the first three elements mentioned above, and also that the images are of any portion of the female breast below the top of the areola or any portion of the pubic hair, anus, cleft of the buttocks, vulva, or genitals. La. R.S. 14:283(B); See 17 Louisiana Civil Law Treatise § 10.283(1) (2d ed.2003).
A review of the evidence presented at trial reveals that it was sufficient to support Wright's convictions of all three counts of video voyeurism. In addition to Wright's admission of his previous criminal history, the evidence included the testimony of the victims and videotapes of various females in his dressing room. After viewing the evidence in the light most favorable to the prosecution, including witnesses' testimony and the exhibits, any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Furthermore, the circumstantial evidence clearly excludes every reasonable hypothesis of innocence. La. R.S. 15:438. These arguments are without merit.

Motion to Suppress
Wright filed a motion to suppress the evidence seized in connection with the search of his vehicle and the subsequent searches, made pursuant to search warrants, of his residence, place of business and computer. At the hearing on the motion to suppress, Lieutenant Scott Tucker of the Minden Police Department testified *439 that Wright was stopped in his vehicle for the execution of an arrest warrant for public intimidation of a child protection investigator. A routine inventory search of Wright's vehicle revealed videotapes in the trunk, some of which were clearly labeled as pornographic-type tapes. Lieutenant Tucker testified that Wright had been previously arrested in August 1996 for obscenity for videotaping in the dressing rooms at Wright's place of business. At that time, video voyeurism was not illegal.
A search warrant was issued to seize and view the tapes for possible illegal sexual acts or video pictures of females taken without their permission based on the evidence found in the trunk, along with an affidavit in support. The affidavit in support of the search warrant set forth the facts regarding Wright's previous videotaping of the dressing rooms, the pending investigation regarding Wright's alleged sexual abuse of his girlfriend's four-year-old son, and the circumstances of Wright's instant arrest from the routine inventory search. Several videotapes indeed contained footage of women and young girls changing clothes and in various stages of undress, including total nudity.
The videotapes served the basis for a second search warrant of Wright's place of business, for evidence of electronic devices for photographing unknown customers from the dressing room or restrooms of the business without their consent, for tapes of past customers, and for any electronic devices used for editing, viewing and transmitting such images of unknown customers. A cursory search of a computer revealed three different audio-video files containing child pornography. Electronic storage media was found around the computer and in the office area of the store. A search of the dressing room at the store revealed that the cameras had been present but had been removed.
A third search warrant was issued to search Wright's residence for any and all computers, electronic media related to child pornography and any peripheral equipment of any kind, any videotapes, magazines or publications pertaining to child pornography, and any audio video equipment used in filming, copying, editing, and transmitting child pornography or other illegal images. A final search warrant was issued for a forensic search of the computer, monitor, media and electronic storage devices located at Wright's business for child pornography.
The trial court noted that the supplementation of each affidavit as more information was gathered did establish probable cause on each warrant. In addition, three different judges ultimately issued and signed the search warrants in connection with this matter. After reviewing the record, we find that every search was substantiated with sufficient probable cause. This argument is without merit.

Venue
Wright filed a pretrial motion for change of venue alleging that the widespread publicity prejudiced the community against him. A hearing was held, and the trial court denied the motion. Wright re-urged his motion before and following jury selection. The trial court determined that a fair and impartial jury had been selected and denied his motion for a change of venue.
Changes of venue are governed by La. C. Cr. P. art. 622, which provides:
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and *440 impartial trial cannot be obtained in the parish where the prosecution is pending. In deciding whether to grant a change of venue, the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
In State v. Bell, 315 So.2d 307 (La.1975), the supreme court enumerated several factors to consider when determining whether to change venue. They include, (1) the nature of pre-trial publicity and the particular degree to which it has circulated in the community, (2) the connection of government officials with the release of the publicity, (3) the length of time between the dissemination of the publicity and the trial, (4) the severity and notoriety of the offense, (5) the area from which the jury is to be drawn, (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant, and (7) any factors likely to affect the candor and veracity of the prospective jurors on voir dire. Id. at 311.
In State v. Frank, XXXX-XXXX (La.01/17/01), 803 So.2d 1, 16, the supreme court explained that, "there is not a bright line test for determining the degree of prejudice existing in the collective mind of the community. There is no established minimum level of exposure to negative publicity or percentage of challenged jurors that illustrates a corruptive atmosphere mandating venue transfer." The Frank court suggested a comparison to other cases as a method of analyzing the questions of possible community prejudice. However, "the defendant must prove more than mere public knowledge or familiarity with the facts of the case to be entitled to have his trial moved to another parish; rather, the defendant must show the extent of prejudice in the minds of the community as a result of such knowledge or exposure to the case before trial." Id. at 14.
In the instant case, the trial court noted, of the 44 prospective jurors, only 15 indicated that they had neither read nor heard anything about the case. Furthermore, although 11 challenges for cause were granted, not all were granted on the issue of new media coverage, and only 6 had formed an opinion regarding guilt. After a review of the record and comparison of the facts surrounding the questioning of the jury venire in this case with examples set forth in State v. Clark, XXXX-XXXX (La.06/27/03), 851 So.2d 1055, cert. denied, 540 U.S. 1190, 124 S.Ct. 1433, 158 L.Ed.2d 98 (2004), Wright failed to meet his burden of proving that a fair trial was impossible. The trial court's decision to deny the motion to change venue was not an abuse of discretion and was without error. These arguments are without merit.

Recusal of the District Attorney's Office
Wright filed and the trial court denied a motion to recuse the district attorney's office alleging that the District Attorney had given untrue and inadmissible information to the press. Louisiana Code of Criminal Procedure art. 680, regarding grounds for recusation of a district attorney, provides in pertinent part that, "A district attorney shall be recused when he: (1) Has a personal interest in the cause or grand jury proceeding which is in conflict with fair and impartial administration of justice." In State v. Anderson, 29,282 (La. App. 2d Cir.06/18/97), 697 So.2d 651, this court held that the defendant's motion to recuse the district attorney, which primarily contained conclusory allegations, failed to show by a preponderance of the evidence any ground for relief enumerated by La. C. Cr. P. art. 680.
*441 At the hearing on the motion to recuse, the defense questioned J. Schuyler Marvin, the Webster Parish District Attorney, about his contact with a local reporter, Kristi Richie. Several articles Richie authored quoted Marvin several times including that he "wanted to try this case." Marvin did not know how Richie received her information for the articles. He denied having any personal interest in this case which would conflict with the fair and impartial administration of justices and he further denied having a relationship to any victim or to the defendant. Although Richie contradicted portions of Marvin's testimony with regard to her source of information for several of her articles, Wright fails to show by a preponderance of the evidence any ground for relief enumerated by La. C. Cr. P. art. 680. This argument is without merit.

Post-trial Motions
Wright assigns as error that the trial court erred in denying his post trial motions.

Motion for New Trial
Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for an error of law. La. C. Cr. P. art. 858; State v. Horne, 28,327 (La.App. 2d Cir.08/21/96), 679 So.2d 953, writ denied, 1996-2345 (La.02/21/97), 688 So.2d 521.
Wright filed a motion for new trial which listed previous objections made during trial and rulings by the trial court, all of which were individually listed as assignments of error in this appeal (i.e. sufficiency of the evidence, concerns with the amended bill of information, denial of challenges for cause, admissibility of the state's exhibits, etc.). In fact, Wright's brief refers this court to review the arguments presented with the specific assignments of error.
Nothing presented by Wright in his Motion for New Trial constituted grounds showing injustice done to him, nor did it amount to reversible error. Here, after analyzing and discussing in detail the grounds for the motion for new trial raised as assignments of error with this opinion, we find that the record supported the trial court's ruling and the evidence was sufficient to sustain the conviction. It cannot be said that the trial court abused its discretion in denying Wright's motion for new trial.

Motion In Arrest of Judgment
The defendant filed a motion in arrest of judgment alleging that: (1) the trial court erred by allowing an amendment to the bill of information after the jury had been selected; and, (2) the statute Wright was convicted under is unconstitutional.
As to the first issue, Wright was originally charged by bill of information filed May 7, 2004, with four counts of violating La. R.S. 14:283(B)(4). The state filed an amended bill of information on October 12, 2004, charging the defendant with two counts of video voyeurism involving a child under age 17, a violation of La. R.S. 14:283(A)(4), and one count of video voyeurism, a violation of La. R.S. 14:283(A)(3). After the jury was selected but before opening remarks at trial, the state moved to amend the amended bill of information, changing the subsection on the amended bill from "A" to "B"; La. R.S. 14:283(B)(4) and La. R.S. 14:283(B)(3). (Emphasis Added.) The defense objected to the amendment, complaining that the bill was amended after the jury was selected and it had already prepared for trial based on the previous bill of information.
Louisiana C. Cr. P. art. 487 provides in pertinent part:

*442 A. An indictment that charges an offense in accordance with the provisions of this Title shall not be invalid or insufficient because of any defect or imperfection in, or omission of, any matter of form only, or because of any miswriting, misspelling, or improper English, or because of the use of any sign, symbol, figure, or abbreviation, or because any similar defect, imperfection, omission, or uncertainty exists therein. The court may at any time cause the indictment to be amended in respect to any such formal defect, imperfection, omission, or uncertainty.
Before the trial begins the court may order an indictment amended with respect to a defect of substance. After the trial begins a mistrial shall be ordered on the ground of a defect of substance.
The purpose of requiring the state to file an amendment to the indictment before trial is to provide the defendant with adequate notice of the crime for which he is charged so that he can properly prepare his defense. State v. Offord, 1995-290 (La. App. 3d Cir.10/04/95), 663 So.2d 296; State v. Young, 615 So.2d 948 (La.App. 1st Cir. 1993), writ denied, 620 So.2d 873 (La. 1993). However, miscitations to relevant criminal statutes in the bill of information have been held to be harmless error. State v. Belino, 96-0789 (La.App. 1st Cir.12/20/96), 686 So.2d 101, writ denied, 1998-2992 (La.06/25/99), 745 So.2d 625.
The trial court noted that the amendment of the indictment was to correct a typographical error in the way the subsections were identified, but that the wording of the bill of information remained the same. It found that the amendment did not make a change of substance, but was to correct a formal defect, which can be corrected by the court at any time, citing La. C. Cr. P. art. 487(A). Thereafter, the defense was given time to make the necessary corrections to its opening statement.
Here, the amendment was clearly made to cure miscitations of subsections to the charges of video voyeurism, which, if error, was harmless. Furthermore, Wright suffered no prejudice when the indictment against him was amended such that he cannot claim that he lacked notice of the crime with which he was charged. Also, Wright was obviously aware that he was to be tried for video voyeurism. Thus, the defendant suffered no prejudice from the amended indictment, and the indictment does not suffer from a defect of substance. This argument lacks merit.
As to determining the constitutionality of a statute, we must follow the basic rules of statutory construction. State v. Shumaker, 40,275 (La.App. 2d Cir.10/28/05), 914 So.2d 1156. A statute is presumed to be constitutional, and the burden of clearly establishing unconstitutionality rests upon the party who attacks the statute. State v. Cunningham, 2004-2200 (La.06/13/05), 903 So.2d 1110. A statute should be upheld whenever possible. State v. Shumaker, supra.
To prove that the law is unconstitutional, the defendant is required to show that an ordinary person of reasonable intelligence could not understand and follow the law. State v. Hair, 2000-2694 (La.05/15/01), 784 So.2d 1269. Broad language is not in itself vague, particularly where it is clear that the legislature intended to make criminal all acts of a certain kind. Id. Louisiana criminal statutes must be "given genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La. R.S. 14:3.
Although there is no reported constitutional challenge to Louisiana's video voyeurism *443 law, there is sufficient jurisprudence holding that the terms "lewd and lascivious" need not be defined by the statute for that statute to survive a constitutional challenge for vagueness. See State v. Interiano, XXXX-XXXX (La.02/13/04), 868 So.2d 9. A plain reading of the activity proscribed by the video voyeurism statute is sufficiently narrow and gives adequate notice to those who would engage in such activities that the conduct is proscribed. Furthermore, the statute is not overbroad because the challenged statute affects conduct rather than speech. Also, it is clear that the legislature intended to make criminal all acts of a certain kind. See State v. Shumaker, supra; State v. Neal, 500 So.2d 374 (La.1987). A review of the record reveals that the trial court did not err in determining that the defense did not meet its burden of clearly establishing unconstitutionality. These arguments are meritless.

Determination of Wright's Competency to Stand Trial
Because Wright failed to brief or argue his assignment of error regarding his competency to stand trial, this issue is considered abandoned on appeal. URCA Rule 2-12.4; State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writs denied, 558 So.2d 1123 (La.1990).[1]

Jury
Wright asserts several assignments of error surrounding the jury process which we will discuss next.

Improper Verdict
Wright asserts that the jury failed to specify a particular portion of the female body, and merely quoted from the statute, which resulted in an improper verdict for count three. The applicable statute La. C. Cr. P. art. 810 provides in pertinent part:
When a verdict has been agreed upon, the foreman shall write the verdict on the back of the list of responsive verdicts given to the jury and shall sign it. There shall be no formal requirement as to the language of the verdict except that it shall clearly convey the intention.
As per La. C. Cr. P. art. 810, there is no formal requirement as to the language of the verdict. The record reflects that the verdict clearly conveyed the intention of the jury to find the defendant guilty of the charged offense. This argument is meritless.

Challenges of Prospective Jurors
Wright challenged for cause, and the trial court denied, several prospective jurors during the voir dire proceeding. La. C. Cr. P. art. 797 provides, in pertinent part, that:
[T]he State or the defendant may challenge a juror for cause on the ground that:
* * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he *444 can render an impartial verdict according to the law and the evidence;
* * *
(4) The juror will not accept the law as given to him by the court;
* * *
Louisiana Constitution article I, § 17 guarantees to a defendant the right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of peremptory challenges granted a defendant in a case other than a capital case is fixed by law at 6. Louisiana C. Cr. P. art. 799. The trial court is vested with broad discretion in ruling on challenges for cause and these rulings will be reversed only when a review of the entire voir dire reveals an abuse of discretion. Therefore, to establish reversible error warranting reversal of a conviction and sentence, defendant must demonstrate (1) the erroneous denial of a challenge for cause; and, (2) the use of all his peremptory challenges. State v. Juniors, 2003-2425 (La.06/29/05), 915 So.2d 291; State v. Cross, XXXX-XXXX (La.06/30/95), 658 So.2d 683; State v. Robertson, 92-2660 (La.01/14/94), 630 So.2d 1278.
In the instant case, Wright exhausted his peremptory challenges; therefore, we need only determine whether the trial court erred in denying defendant's challenges for cause. After an extensive review of the record, we find that the defense did not demonstrate an erroneous denial of a challenge for cause. The record reflects that the responses of the prospective jurors in question as a whole do not reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. A review of the entire voir dire does not reveal any abuse of discretion by the trial court in ruling on these challenges for cause. These arguments are meritless.

Jury Instructions
Wright requested two jury instructions particularizing the elements of the video voyeurism statute. The state argued that the proposed instructions were not wholly correct. The trial court refused to give the requested instructions to the jury because the definition of video voyeurism and the essential elements of the statute were contained in the court's general charge. The trial court noted that the general charge repeatedly defined video voyeurism and explained criminal intent. Wright's objection was noted for the record.
Louisiana C. Cr. P. art. 807, regarding special written charges, provides in pertinent part:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
Failure to read a special charge constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused or a violation of a constitutional or statutory right. State v. Edwards, 25,963 (La.App. 2d Cir.05/04/94), 637 So.2d 600; see also State v. Fradieu, XXXX-XXXX (La.App. 4th Cir.06/25/03), 851 So.2d 345, writ denied, 2003-2079 (La.01/16/04), 864 So.2d 627.
Here, the trial court's failure to read the special charges did not constitute reversible error as there was no evidence of jury confusion. Furthermore, the record reveals that there was no miscarriage of justice, prejudice to the substantial rights of the defendant or a violation of a constitutional or statutory right. The record supports the conclusion that the trial *445 court did not err in denying Wright's request for the two special charges.
Wright also made an objection regarding the responsive verdicts to count three. The court gave five responsive verdicts to count three:
1. Guilty of video voyeurism of any portion of the female breast below the top of the areola or any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals;
2. Guilty of attempted video voyeurism of any portion of the female breast below the top of the areola or any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals;
3. Guilty of video voyeurism;
4. Guilty of attempted video voyeurism; or
5. Not guilty.
Wright requested that the responsive verdicts be the following: guilty of video voyeurism, guilty of attempted video voyeurism, or not guilty complaining that the statute is confusing. In other words, Wright believed that the responsive verdicts gave the jury more options for a finding of guilty than not guilty. The trial court denied the request, and noted that because count three required a finding of additional special conduct, it was more accurate to give the five responsive verdicts. The defense's objection was noted for the record.
Louisiana C. Cr. P. art. 814 provides responsive verdicts for specified criminal offenses. However since video voyeurism is not one of the specified criminal offenses, La. C. Cr. P. art. 915 instructs that for all cases not provided for in Article 814, the following verdicts are responsive:
(1) Guilty;
(2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or
(3) Not Guilty.
Considering the elements of the crime, including the special conduct charged under count three, and the provisions of La. C. Cr. P. art. 815, the trial court did not err in setting forth these five responsive verdicts. See 17 Louisiana Civil Law Treatise § 10.283(1) (2d ed.2003). This argument is meritless.

Motions for Mistrial
Wright argues that the trial court erred in failing to grant mistrials in two instances (1) because of comments made by prospective juror T.J. Williams; and, (2) after exhibit S-3 was shown to the jury. Louisiana C. Cr. P. art. 775 provides that a mistrial shall be ordered when prejudicial conduct in the courtroom makes it impossible for the defendant to obtain a fair trial. Because a mistrial is a drastic remedy, it should be granted only when the error resulted in substantial prejudice sufficient to deprive the defendant of any reasonable expectation of a fair trial. The decision to grant or deny a mistrial for prejudicial conduct rests within the trial court's discretion and will not be disturbed absent an abuse of discretion. See State v. McGee, 39,336 (La.App. 2d Cir.03/04/05), 895 So.2d 780; State v. Turner, 37,162 (La.App.2d Cir.10/29/03), 859 So.2d 911, writ denied, XXXX-XXXX (La.03/26/04), 871 So.2d 347.
As to the comments made by Williams during the voir dire, the following colloquy transpired:
Mr. Smith: Do you know anything about this case?
Williams: Just what I read in the paper.
Mr. Smith: Okay. Based  having read something in the paper or maybe even heard it on the radio or seen it on television, has it caused you to reach *446 an opinion as to guilt or innocence of Mr. Wright?
Williams: I'm not sure. I guess I need to listen to it in court.
Mr. Smith: Okay.
Williams: What I read in the paper, if what I read is true, you know, 
Mr. Smith: I understand.
Williams: He looks pretty guilty to me. I assume that if what I read in the paper is true.
(LAUGHTER IN THE COURTROOM)
At a sidebar conference, the defense made a motion for mistrial based on Williams' statement. It argued that Williams said exactly what he was trying to keep the other prospective jurors who hadn't read the paper from hearing. The motion for mistrial was denied by the trial court. It noted that Williams did not go into any specific facts. The defense did not request an admonition from the court. Williams was later challenged for cause by the defense and did not serve on the jury.
In the second instance, after the admission into evidence of Exhibit S-3, the videotape of the television show newscast regarding video voyeurism, the video was viewed by the jury over the defense's objection. The defense's motion for mistrial based on the alleged highly prejudicial content of the video was denied by the trial court.
A review of the record regarding both motions for mistrial reveals that the alleged prejudicial conduct did not make it impossible for Wright to obtain a fair trial. That is, the alleged errors did not result in substantial prejudice sufficient to deprive Wright of any reasonable expectation of a fair trial. The trial court's decision to deny the motions for mistrial for prejudicial conduct was clearly not an abuse of discretion.

Testimony at Trial
Wright complains of the testimony presented at trial by two witnesses. In addition, Wright complains of his inability to testify as to a limited issue.

Lt. Scott Tucker
During the testimony of Lt. Scott Tucker, Wright objected to his specific testimony regarding the items removed from Wright's vehicle after the vehicle stop. Lieutenant Tucker was present during the stop and assisted Detective Weaver in seizing the box containing 17 videotapes from Wright's vehicle during the inventory search of the vehicle. He identified the box of videotapes Det. Weaver turned over to him as the same box he saw in Wright's trunk. Lieutenant Tucker further identified his signature on the evidence tag indicating when he received the evidence from Det. Weaver after reviewing the tapes in Det. Weaver's office.
Lieutenant Tucker testified that Exhibits S-1A and S-2A were tapes of excerpts he made from the original videotape. The state subsequently introduced Exhibits S-1 (videotape); S-1A (excerpt from S-1); S-1-B (excerpt from S-1); and S-2 in globo (box of 17 videotapes). The trial court overruled Wright's objection regarding chain of custody and foundation and the exhibits were subsequently admitted into evidence. Wright notes that Lt. Tucker was not the officer who collected the evidence, and argues that it was hearsay for Lt. Tucker to testify regarding what Det. Weaver did during the collection of the evidence in question.
Louisiana C.E. art. 602 provides:
A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness *447 himself. This Article is subject to the provisions of Article 703, relating to opinion testimony by expert witnesses.
Personal knowledge is information acquired through the use of a witness' senses. Comment, La. C.E. art. 601; State v. Wiley, 614 So.2d 862 (La.App. 2d Cir.1993). The testimony of a police officer may encompass information provided by another individual without constituting hearsay, if it is offered to explain the course of the police investigation and the steps leading to the defendant's arrest. State v. Maise, XXXX-XXXX (La.01/15/02), 805 So.2d 1141; State v. Monk, 315 So.2d 727, 740 (La.1975). A review of the record reveals that the trial court did not err in allowing Lt. Tucker to testify regarding customary police procedure for the custody of evidence, which is clearly within the realm of a police officer's personal knowledge. Also, under La. C.E. art. 602, it was not error to allow Lt. Tucker to testify to facts within his personal knowledge regarding his contact with the evidence in question during its initial seizure and afterward. This argument is without merit.

Testimony of C.G.
Over Wright's objection, C.G. was allowed to testify at trial regarding her lack of consent. Wright argued that count one of the bill of information dealt with charges involving the juvenile, C.G., but did not allege that this incident occurred without her consent. In so ruling, the trial court noted that Wright had been put on sufficient notice by the filing of the bill that he was accused of video voyeurism and of the particular statute. The trial court observed lack of consent of the victim is implicit in that statute.
The defendant has a constitutional right to be advised, in a criminal prosecution, of the nature and cause of the accusations against him. Louisiana Const.1974, art. I, § 13. La. C. Cr. P. art. 464 provides:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.
The omission of essential facts from an indictment, however, is not necessarily prejudicial error because such facts can be given through responses in a bill of particulars. State v. Duncan, 94 1563 (La.App. 1st Cir.12/15/95), 667 So.2d 1141.
A review of this record reveals that Wright was not prejudiced by any alleged deficiency in the bill. The bill correctly cites the statutory provision for video voyeurism and put Wright on notice of the crime charge, including the element of lack of consent. At trial, the correct subsections of the statute were used, and the conviction was responsive to the original charge. Therefore, any misstatement of statutory language on the bill of information amounted to harmless error. Wright did not request a bill of particulars, and he did not move to quash the bill of information. Thus, any alleged defect in the bill, and the subsequent testimony of C.G. regarding the issue of consent, is not reversible.

Limited Testimony of Wright
During Wright's cross-examination of Lt. Tucker at trial, Wright requested that he be allowed to testify to a limited issue regarding whether the trunk of his vehicle was secured during transport by *448 the wrecker at the time of his initial arrest. Specifically, Wright wanted to explain that there may have been access to his trunk when the vehicle was confiscated. The trial court denied the request, stating that if Wright testified on this issue, he would then be subject to cross-examination on the entire case.
Louisiana C.E. art. 611, regarding mode and order of interrogation and presentation, provides in pertinent part:
A. Control by court. Except as provided by this Article and Code of Criminal Procedure Article 773, the parties to a proceeding have the primary responsibility of presenting the evidence and examining the witnesses. The court, however, shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to:
(1) Make the interrogation and presentation effective for the ascertainment of the truth;
(2) Avoid needless consumption of time; and
(3) Protect witnesses from harassment or undue embarrassment.
B. Scope of cross-examination. A witness may be cross-examined on any matter relevant to any issue in the case, including credibility.
The provisions of La. C.E. art. 611(B) clearly provide that a witness may be cross-examined on any matter relevant to any issue in the case. Similarly, the wide scope for cross examination is explained in other trial procedure articles as seen with La. C. Cr. P. art. 703(E)(2) which states, "[i]f the defendant testifies before the jury at the trial on the merits, he can be cross-examined on the whole case."
By extension, the statute does not support Wright's request to testify and be cross-examined on a limited issue. We also note that Wright provided no case law or other statutory provisions, nor have we found any, to support this request. Also the transcripts reveal that Wright testified in his own defense at trial and had the opportunity to address this specific issue. Considering the discretion a trial court has to exercise control over witnesses, the trial court did not err in denying the defense's request for the defendant's limited testimony during the state's case. This argument is meritless.

Exhibits
Wright objected, and asserts several assignments of error, to the admissibility of several of the state's exhibits, specifically a television show newscast regarding video voyeurism. In addition, Wright asserts that the trial court erred in allowing the jury to review the exhibits during deliberation.

Admissibility of State Exhibits
The trial court overruled the defense's objection regarding chain of custody and foundation and the state's exhibits were admitted into evidence. The Louisiana Supreme Court has stated that to admit demonstrative evidence at trial, the law requires that the object be identified. State v. Smith, 430 So.2d 31, 43 (La.1983); State v. Moore, 419 So.2d 963 (La.1982); State v. Drew, 360 So.2d 500 (La.1978). A sufficient foundation has been laid for the admission of demonstrative evidence if it has been established that it is more probable than not that the object is the one connected with the case. State v. Sharp, 414 So.2d 752 (La.1982); State v. Davis, 411 So.2d 434 (La.1982).
The record supports a finding that the trial court did not err in admitting the contested exhibits into evidence. The state, through the extensive testimony of Lt. Tucker and related physical evidence, i.e., evidence tags, laid a sufficient foundation *449 for the admission of these exhibits by their identification, and by establishing that it is more probable than not that these exhibits were connected with this case.
Specifically as to the newscast video, Wright argues that its admission was unduly prejudicial to him because the only purpose was an attempt to show that the defendant was a bad person trying to get around video voyeurism laws and to continue videotaping in his stores. The trial court has great discretion in admitting photographs into evidence, and the court's ruling will not be disturbed absent an abuse of that discretion. State v. Hopkins, 39,730 (La.App. 2d Cir.08/17/05), 908 So.2d 1265, writ denied, 2005-2253 (La.03/17/06), 925 So.2d 541. "Photographs" include still photographs, X-ray films, videotapes, motion pictures, and their equivalents. La. C.E. art. 1001(2). Photographs that illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted are admissible, assuming that their probative value outweighs any prejudicial effect. La. C.E. arts. 401, 403; State v. Battaglia, 03-692 (La.App. 5th Cir.11/25/03), 861 So.2d 704, writ denied, XXXX-XXXX (La.04/29/05), 901 So.2d 1058.
A review of the record reveals that the trial court did not abuse its great discretion in admitting the newscast videotape into evidence. The videotape shed light on Wright's criminal intent. It also illustrated the lack of video voyeurism laws in Louisiana prior to the enactment of La. R.S. 14:283. Other evidence at trial, including Wright's own testimony, showed that he had previously been involved in an incident involving video voyeurism, but escaped prosecution because of the lack of a video voyeurism statute at the time. Considering the other evidence presented to prove this element of the offense, the introduction of the videotape had little prejudicial effect and was outweighed by its probative value. These assignments are also meritless.

The Jury's Review of the Exhibits
During jury deliberation, the jury requested to see "the videos and other evidence." Over Wright's objection, the trial court permitted the jury to see the videotapes, the actual box that contained the videotapes, and the bill of information. However, the trial court did not permit the jury to see the newscast videotape.
Louisiana C. Cr. P. art. 793(A) provides:
A. A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
Under the plain language of La. C. Cr. P. art. 793, a videotape/audiotape recording of a crime as it occurs is neither written evidence nor testimony. State v. Brooks, XXXX-XXXX (La.01/14/03), 838 So.2d 725. Subject to the explicit restrictions imposed by that statute, and by our jurisprudential rule precluding the use of a defendant's confession in any form in the course of jury deliberations, a trial judge has sound discretion in permitting the jury's review of properly-admitted evidentiary exhibits during its deliberations, including audiotapes and videotapes. See State v. Brooks, supra.
A review of the record in the case sub judice reveals that the trial court did not abuse its sound discretion in permitting *450 the jury's review of the properly-admitted videotapes during its deliberations. Furthermore, the trial court showed judicial restraint in not allowing the television show newscast videotape to be viewed by the jury. This argument is without merit.

Sentencing
Wright asserts that the sentence imposed is excessive and the trial court erred in denying his motion to reconsider. However, in light of an error patent, a discussion of the constitutionality of the sentences is pretermitted.
The maximum sentence that can be imposed for counts one and two, in violation of La. R.S. 14:283(B)(4), is a fine of not more than $10,000.00 and imprisonment at hard labor for not less than two years or more than ten years without benefit of parole, probation, or suspension of sentence. The maximum sentence for count three, in violation of La. R.S. 14:283(B)(3), is a fine of not more than $10,000.00 and imprisonment at hard labor for not less than one year or more than five years, without benefit of parole, probation, or suspension of sentence.
The trial court sentenced the defendant to serve five years imprisonment at hard labor on count one, ten years on count two, and ten years on count three. Each sentence was imposed without benefit of probation, parole or suspension of sentence, and ordered to be served concurrently.[2] The defendant's oral motion to reconsider sentence was denied.
The sentence imposed for count three is illegal because it is five years more than the maximum possible sentence under La. R.S. 14:283(B)(3). It is clear that the trial court intended to impose the maximum sentences on all three counts of the bill of information, but instead imposed those sentences upon the incorrect count numbers. Therefore all three sentences are vacated, and the matter remanded for resentencing.

CONCLUSION
For the foregoing reasons, the trial court's convictions are affirmed. However, because of the sentencing error noted, we vacate the sentences and remand for resentencing.
CONVICTION AFFIRMED; SENTENCES VACATED; REMANDED FOR RESENTENCING.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, PEATROSS, and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] However, we note that a hearing was held to determine Wright's competency to stand trial. The issue was submitted to the court based on reports from Dr. Richard Williams and Dr. George Seiden who evaluated the defendant. Both doctors determined that Wright had the ability to consult with his attorney and understand the nature of the charges against him and that he is competent to stand trial on these charges. The trial court noted that no other evidence to indicate anything to the contrary was introduced by the defense, and ruled accordingly.
[2] When two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883; State v. Robinson, 33,921 (La.App. 2d Cir.11/01/00), 770 So.2d 868; State v. Coleman, 32,906 (La.App. 2d Cir.04/05/00), 756 So.2d 1218, writ denied, XXXX-XXXX (La.03/23/01), 787 So.2d 1010; State v. Derry, 516 So.2d 1284 (La.App. 2d Cir.1987), writ denied, 521 So.2d 1168 (La.1988).